644 F.2d 953
 64 A.L.R.Fed. 539, 81-1 USTC P 9306
 UNITED STATES of America and Monroe Hollander, Special
Agent, Internal Revenue Service, Petitioners-Appellees,
v.
NEW YORK TELEPHONE COMPANY and K. Haupt, Business Office
Supervisor, Respondents-Appellants,
and
Patsy Tuccio, Intervenor-Appellant.
 Nos. 468, 469, Dockets 80-6089, 80-6097.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 18, 1980.
Decided March 27, 1981.
 
 Lon S. Bannett, New York City (George E. Ashley, Clarin S. Schwartz, New York City, of counsel) for respondents-appellants.
 Bernard Feigen, New York City (Sherman, Feigen & Slivka, Max Rosner, New York City, of counsel) for intervenor-appellant.
 William A. Whitledge, Atty., Tax Div., Dept. of Justice, Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Michael L. Paup, Charles E. Brookhart, Attys., Tax Div., Dept. of Justice, Washington, D. C., Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., of counsel), for petitioners-appellees.
 Before FEINBERG, Chief Judge, KEARSE, Circuit Judge, and EDELSTEIN, District Judge.*
 KEARSE, Circuit Judge:
 
 
 1
 These appeals arise from an action commenced by appellees United States of America and Monroe Hollander, a Special Agent of the Internal Revenue Service ("IRS") (collectively the "government"), in the United States District Court for the Eastern District of New York, to obtain an order requiring appellant New York Telephone Company ("Telephone Company") to comply with an IRS summons served on it pursuant to § 7602 of the Internal Revenue Code, 26 U.S.C. § 7602(a) (1976), for the production of records kept by the Telephone Company with respect to appellant Patsy Tuccio. The Telephone Company opposed the government's petition, and Tuccio sought to intervene and stay enforcement, on the ground that the Telephone Company is a third-party recordkeeper within the meaning of I.R.C. § 7609, 26 U.S.C. § 7609 (1976). The district court, Jacob Mishler, then-Chief Judge, ruled that the Telephone Company is not a third-party recordkeeper within the meaning of that section, and accordingly denied Tuccio's motion to intervene and ordered compliance with the summons. 80-1 U.S.Tax Cas. P 9460 (E.D.N.Y. Apr. 9, 1980). For the reasons below, we vacate and remand for further proceedings.
 
 FACTS
 
 2
 The facts relevant to the present appeal are not in dispute. The IRS is conducting an investigation with respect to Tuccio's tax liabilities for the years 1976 and 1977. As part of that investigation, on May 1, 1979, IRS issued an administrative summons to the Telephone Company pursuant to § 7602, ordering its business office supervisor to appear on May 18, 1979, and to bring with him "(a)ll records of billing and payments regarding all telephones in the name of Patsy (Pat) Tuccio and/or Shanda Tuccio ... for the years 1976 & 1977." The summons stated that "all records (are) to include unlisted or non-published telephone numbers." On May 2, IRS notified Tuccio of the summons, pursuant to I.R.C. § 7609. That section requires the IRS to give such notice when it serves a summons on a "third-party recordkeeper" a term defined to include persons who extend credit through devices such as credit cards, § 7609(a)(3)(C) if the summons requires the production of records concerning transactions of a person other than the recordkeeper; such other person is then allowed to stay compliance by the recordkeeper and to intervene in any enforcement proceedings. On May 9, 1979, Tuccio instructed the Telephone Company, pursuant to § 7609, not to comply with the summons. The Telephone Company has followed Tuccio's instructions.
 
 
 3
 The present proceeding to enforce the summons was instituted by the government in January 1980. The petition stated that
 
 
 4
 (t)he testimony, books, records, papers and other data demanded by the summons relate to the liabilities under investigation, and might shed light on the correctness of the taxpayer's federal income tax returns, his correct tax liability, or his liability for the 50% fraud penalty of 26 U.S.C. § 6653(b).
 
 
 5
 The Telephone Company opposed the petition on the ground that the Company extends credit by means of credit cards and other billing practices, and is thus a third-party recordkeeper within the meaning of § 7609(a)(3)(C), and that it had been duly notified by Tuccio not to permit examination of records concerning him. Tuccio shortly sought to intervene, contending that the records sought were not relevant to his tax liability for the years in question, since he had not claimed any deduction for telephone expenses.[1]
 
 
 6
 The threshold issue before the district court was whether the Telephone Company qualified as a third-party recordkeeper under § 7609(a)(3)(C). The government sought to repudiate the § 7609 notice it had given Tuccio, claiming that notice had been "incorrectly given." It argued that the Telephone Company "is in fact not a third-party recordkeeper," and that Tuccio therefore was not entitled to receive notice, to intervene, or to stay compliance. The district court agreed, holding that § 7609(a)(3)(C) contemplates only "true credit transactions," and therefore includes "only those who finance the taxpayer's transactions with others." 80-1 U.S.Tax Cas. P 9460 at 84,255. Ruling that the Telephone Company's dealings with its customers are not true credit transactions, the district court denied Tuccio's motion to intervene and ordered enforcement of the summons. Both Tuccio and the Telephone Company have appealed.
 
 DISCUSSION
 
 7
 The IRS has long had broad power, pursuant to I.R.C. § 7602 and its predecessors, to issue administrative summonses to examine any books, papers, records or other data that may be relevant or material to an inquiry into compliance with the internal revenue laws.[2] It has not only the right to obtain records held by the taxpayer, but also the power to summon, question, and require production from "any person" who holds records "relating to the business of the person liable for the tax." I.R.C. § 7602.[3] Section 7602 has been construed to codify a broad testimonial obligation to provide most relevant, nonprivileged evidence. See United States v. Euge, 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980) (section gives IRS authority to compel execution of handwriting exemplars). The issuance of a summons pursuant to the section is permitted without any advance showing of probable cause, United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), and is circumscribed principally by concepts of relevance and materiality. A summons believed to demand records not relevant or material to the particular inquiry may be challenged on that ground by the holder of the records. Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). Until 1976, however, a person whose tax liability was under investigation, but who was not the recordkeeper, had no power to prevent compliance with a summons that called for irrelevant or immaterial records, since he was not allowed to intervene in a compliance proceeding. See Donaldson v. United States, 400 U.S. 517, 528-30, 91 S.Ct. 534, 541-42, 27 L.Ed.2d 580 (1971) (upholding discretionary denial of intervention under F.R.Civ.P. 24(a)(2)). Indeed, the taxpayer often was not even aware of the summons in time to attempt to intervene.
 
 
 8
 In 1976, Congress enacted § 7609 as part of the Tax Reform Act of 1976, Pub.L.No.94-455, 90 Stat. 1520 (1976), to provide certain checks on IRS's use of third-party summonses. While explicitly recognizing the importance of the third-party summons as an IRS investigative device, the congressional committees responsible for drafting § 7609 were concerned that "the use of this important investigative tool should not unreasonably infringe on the civil rights of taxpayers, including the right to privacy." H.R.Rep.No.94-658, 94th Cong., 2d Sess. 307, reprinted in (1976) U.S.Code Cong. & Ad.News 2897, 3203; S.Rep.No.94-938, 94th Cong. 2d Sess. 368, reprinted in (1976) U.S.Code Cong. & Ad.News 3439, 3797. Recognizing that the third-party could raise questions as to relevance and other issues bearing on the privacy rights of the person to whom the records pertained, the legislators nonetheless concluded that those issues often would be less vigorously pursued by the third-party than by the person whose interests were at stake:
 
 
 9
 While the third-party witness also has this right of challenge, even under present law, the interest of the third-party witness in protecting the privacy of the records in question is frequently far less intense than that of the person to whom the records pertain.
 
 
 10
 H.Rep.No.94-658, supra ; S.Rep.No.94-938, supra, at 368-69.
 
 
 11
 The solution, embodied in § 7609, was to require IRS to give prompt notice to the person to whom the records pertain, and to allow that person to stay production of the records by the third-party and to intervene in any court proceeding for enforcement of the summons.[4] The new procedure was not designed to give the taxpayer new substantive rights, but only to provide an early opportunity for him, as the person with the greatest interest in protecting the existing substantive rights, to secure recognition of those rights.[5] H.Rep.No.94-658, supra, at 309; S.Rep.No.94-938, supra, at 370. See United States v. Chemical Bank, 593 F.2d 451, 458 (2d Cir. 1979).
 
 
 12
 As finally enacted, § 7609 contains a detailed definition of "third-party recordkeepers." § 7609(a)(3). The definition, set forth in full in the margin,[6] lists six categories of persons, including any attorneys or accountants, certain brokers, banking institutions, and consumer reporting agencies, and, the category at issue in the present case,
 
 
 13
 any person extending credit through the use of credit cards or similar devices.
 
 
 14
 § 7609(a)(3)(C). The statute does not define the terms "credit cards" and "similar devices."
 
 
 15
 The Telephone Company argues that it fits well within the above category for several reasons: first, because it extends credit through the use of credit cards; second, because certain of its policies, including that of permitting customers to place a call from one billing number to a second number and to have the charges billed to a third number, constitute the extension of credit through a device similar to a credit card; and third, because its policy of billing customers for telephone charges one month in arrears is also an extension of credit through a device similar to a credit card. While we reject the third argument[7] and are skeptical about the second,[8] we find merit in the first.
 
 
 16
 For more than four decades, customers of the Telephone Company have been able to procure a credit card that enables them to charge the cost of telephone calls to a credit account rather than, for example, paying cash from coin telephones or charging such calls to the party being called. A credit card call is placed simply by informing the telephone operator that that is desired and by providing the number of the credit card account. Tuccio has had a Telephone Company credit card since 1971. While most Telephone Company credit cardholders are subscribers to regular telephone service and have their credit account numbers keyed to their telephone numbers, credit cards are issued also to nonsubscribers. In the latter cases, as well as other cases less obvious, the credit card account number is not reflective of the owner's telephone number. The Telephone Company reviews applications for credit cards with a view to the quality of the credit risk, especially when the applicant is not a subscriber to telephone service. In some cases deposits are required. Charges for calls made by means of the credit card are billed at the end of each month, and the total charges are then due and payable. There is no finance or interest charge on these accounts, but there is an extra charge over the normal point-to-point rates for a call charged to a credit card.
 
 
 17
 The Telephone Company is not always the provider of the services for which payment is arranged through its credit card. The credit card may be used to make calls not only on the Telephone Company's own lines, but as well on lines of other companies within the Bell System, on lines of any other domestic company outside the Bell System, such as General Telephone and Electronics, and on lines of many overseas telephone companies. Thus the cardholder may deal with another telephone company whose charges will be collected from the Telephone Company, and the latter will then bill the holder.
 
 
 18
 On the basis of these facts we conclude that the Telephone Company extends credit by means of credit cards, and is thus a "third-party recordkeeper" within the plain meaning of § 7609(a)(3)(C).
 
 
 19
 We find nothing in the legislative history of § 7609 to deflect us from this conclusion. The version of § 7609 originally introduced in the House of Representatives did not use the term "third-party recordkeeper." It provided that if a summons was served on "any person," seeking records relating to the business or transaction of any other specified person, that other person was entitled to notice. H.R.10612, 94th Cong., 2d Sess. § 1211 (1976). The Senate sought to amend the bill in several respects, one of which narrowed the scope of the notice requirement by limiting "any person" to those in the business of making or keeping records of the business transactions or affairs of other persons. Thus, the Senate amendment provided that if a summons was served on
 
 
 20
 any person whose business consists, in whole or in part, of making or keeping records of the business transactions or affairs of other persons,
 
 
 21
 and the summons sought records of the business or transactions of any such other person, such other person was entitled to notice. H.R.10612 as amended by Senate, 94th Cong., 2d Sess. § 1205 (1976). The Senate Report stated that for purposes of these notice requirements "a third party recordkeeper is generally to be a person engaged in making or keeping the records involving transactions of other persons."[9] S.Rep.94-938, supra, at 369. The Report indicated, although the language did not then appear in the bill or the amendment, that third-party recordkeepers would include banks, brokerage houses, accountants and others. Id. In the conference to reconcile the differences between the House bill and the Senate amendment, it was decided to insert in the statute language to
 
 
 22
 clarif(y) the definition of a third-party recordkeeper, limiting this category to attorneys, accountants, banks, trust companies, credit unions, savings and loan institutions, credit reporting agencies, issuers of credit cards, and brokers in stock or other securities.
 
 
 23
 House Conf.Rpt.No. 94-1515, 94th Cong., 2d Sess. 486, reprinted in (1976) U.S.Code Cong. & Ad.News 2897, 4118, 4190. While we agree with the government that this sequence resulted in a narrowing of the third-party class, nothing demonstrates an intention that the term "person extending credit through credit cards or similar devices" be construed so narrowly as to exclude a person such as the Telephone Company, operating as described above.[10]
 
 
 24
 So far as we are aware, other judicial interpretations of this provision are consistent with our own. For example, in United States v. New England Telephone Co., No. 79-60-L (D.N.H. Feb. 29, 1980), the court held that the issuance of telephone company credit cards similar to those issued here qualified a telephone company as a third-party recordkeeper. In United States v. Desert Palace Inc. d/b/a Caesars Palace, 1979-1 U.S.Tax Cas. P 9296 (D.Nev. Mar. 12, 1979), the court held that the credit cards issued by Caesars Palace to some customers brought that establishment within § 7609(a)(3)(C). The reasoning and results of cases such as United States v. Manchel, Lundy and Lessin, 477 F.Supp. 326 (E.D.Pa.1979); United States v. Exxon Co., 450 F.Supp. 472 (D.Md.1978); and United States v. Connecticut Motor Club, 79-1 U.S.Tax Cas. P 9141 (D.Conn. Dec. 13, 1978), are not to the contrary. In Exxon, IRS sought production of records relating to Exxon's lease of real property from the taxpayer. The court noted that although Exxon did indeed extend credit by means of credit cards issued to motorists, the summons was directed to Exxon other than in its capacity as an extender of credit, and hence § 7609 did not apply. The court noted that had the taxpayer been a credit cardholder whose credit records were sought, § 7609 would have been applicable. Cf. United States v. Ohio Bell Telephone Company, 475 F.Supp. 697, 699 (N.D.Ohio 1978); id. at n.2. In Manchel, Lundy and Lessin, the IRS summons was directed to a law firm, and the taxpayer sought to invoke § 7609(a)(3)(E), which includes "any attorney." The firm, however, had not acted as attorney to the taxpayer; it had merely been his employer. The court held that the firm was not summoned in its capacity as an "attorney" within the contemplation of the definition of "third-party recordkeeper." Accord: United States v. White Agency, 79-1 U.S.Tax Cas. P 9300 (W.D.Mich. March 20, 1979), adopting Magistrate's recommendation reported at 79-1 U.S.Tax Cas. P 9265 (insurance agency that was also a licensed broker summoned only in its insurance agency capacity, not as a broker: held, not a third-party recordkeeper under § 7609(a) (3)(D); United States v. J. Joseph Gartland, Inc., 79 F.R.D. 148 (D.Md.1978) ( § 7609 inapplicable where recordkeeper was merely a company that did business with taxpayer).
 
 
 25
 Few of the government's arguments, insofar as they are not dealt with above, merit extended discussion. The fact that one need not physically present a telephone credit card in order to charge a telephone call does not necessarily distinguish it from credit cards whose issuers the government concedes are third-party recordkeepers. For example, with a Visa or American Express card, one can telephone any number of establishments and obtain goods or services on credit merely by reciting the account number on the card. Nor do we find any merit in the government's contention that a restricted interpretation of § 7609(a)(3)(C) is mandated by analogy to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601-93 (1976), which defines a credit card as:
 
 
 26
 any card, plate, coupon book or other credit device existing for the purpose of obtaining money, property, labor or services on credit.
 
 
 27
 15 U.S.C. § 1602(k). First, we note that had Congress intended to import this definition into subsection (C) of the third-party recordkeeper definition, it would undoubtedly have done so explicitly: in subsections (A), (B), and (D) it cross-referenced to four other statutory provisions in defining banks, credit unions, consumer reporting agencies, and brokers. Second, even the TILA definition includes cards and "other credit device(s)," and hence does not appear to narrow the field. Finally, there is no reason to believe that the thrust of § 7609 was the same as that of the Truth in Lending Act, since § 7609 was intended generally "to protect the rights of taxpayers vis a vis the Internal Revenue Service." H.R.Rep.No. 94-658, supra, 16. See S.Rep.No.94-938, supra, at 19.
 
 
 28
 In light of the credit card operations of the Telephone Company as described above, the fact that Tuccio is a credit cardholder, and the fact that the summons is broad enough to include records relating to Tuccio's credit card transactions, we conclude that § 7609 was applicable and that Tuccio should have been allowed to intervene in the compliance proceeding. We therefore vacate the judgment granting enforcement of the summons, and remand for consideration of Tuccio's relevancy arguments and for such other proceedings as may be appropriate.
 
 
 29
 Vacated and remanded.
 
 
 
 *
 Honorable David N. Edelstein, of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 Tuccio's brief on appeal indicates that Tuccio did claim a deduction of $50 for telephone charges in 1977, but that as his return showed a negative income for the year, his tax liability would not be affected even if this deduction were completely disallowed
 
 
 [2]
 The authority of the IRS to examine documents and to issue administrative summonses dates back to the Act of June 30, 1864, ch. 172, §§ 11, 13, ch. 173, § 14, R.S. §§ 3173, 3174, 13 Stat. 218. The 1864 language was adopted without change by the Revenue Act of February 26, 1926, ch. 27, § 1115, 44 Stat. 118, 119 (1926) and served as the basis for the codifications of the summons power in Internal Revenue Code of 1939, § 3615, 53 Stat. 439 (1939), and currently in I.R.C. § 7602
 
 
 [3]
 Section 7602 provides as follows:
 For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized
 (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
 (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
 (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.
 
 
 [4]
 Section 7609 provides in part as follows:
 (a) Notice.
 (1) In general. If
 (A) any summons described in subsection (c) is served on any person who is a third-party recordkeeper (see note 6, infra ), and
 (B) the summons requires the production of any portion of records made or kept of the business transactions or affairs of any person (other than the person summoned) who is identified in the description of the records contained in the summons,
 then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 14th day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain directions for staying compliance with the summons under subsection (b)(2).
 (b) Right to intervene; right to stay compliance.
 (1) Intervention. Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604.
 (2) Right to stay compliance. Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to stay compliance with the summons if, not later than the 14th day after the day such notice is given in the manner provided in subsection (a) (2)
 (A) notice in writing is given to the person summoned not to comply with the summons, and
 (B) a copy of such notice not to comply with the summons is mailed by registered or certified mail to such person and to such office as the Secretary may direct in the notice referred to in subsection (a)(1).
 (d) Restriction on examination of records. No examination of any records required to be produced under a summons as to which notice is required under subsection (a) may be made
 (1) before the expiration of the 14-day period allowed for the notice not to comply under subsection (b)(2), or
 (2) when the requirements of subsection (b)(2) have been met, except in accordance with an order issued by a court of competent jurisdiction authorizing examination of such records or with the consent of the person staying compliance.
 
 
 [5]
 Anticipating that there might be circumstances in which notification might endanger the continued existence of the evidence sought, Congress provided in § 7609(g) that where there "is reasonable cause to believe the giving of notice may lead to attempts to conceal, destroy, or alter records relevant to the examination," or to prevent a witness from testifying or producing records, the notice provisions of the statute do not apply
 
 
 [6]
 Section 7609(a)(3) provides as follows:
 (3) Third-party recordkeeper defined. For purposes of this subsection, the term "third-party recordkeeper" means
 (A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law, any bank (as defined in section 581), or any credit union (within the meaning of section 501(c)(14)(A));
 (B) any consumer reporting agency (as defined under section 603(d) of the Fair Credit Reporting Act (15 U.S.C. 1681a(f)));
 (C) any person extending credit through the use of credit cards or similar devices;
 (D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(4)));
 (E) any attorney; and
 (F) any accountant.
 
 
 [7]
 While we consider the practice of billing in arrears to be an extension of credit, in the sense that service is given for which it is agreed that payment will be made at a later date, it is not a practice that requires or uses credit cards or devices similar to credit cards. We view the phrase "through the use of credit cards or similar devices" as words of limitation rather than as mere exemplification. To hold that the Telephone Company is a third-party recordkeeper by virtue of its "arrears" policy would, we believe, read this limiting phrase out of Congress's definition, and open the category to persons not even arguably within the contemplation of Congress
 
 
 [8]
 These other practices present a closer question. They share some, but not all, of the characteristics of the credit card transactions and capabilities. Since we find the Telephone Company is a third-party recordkeeper because of its issuance of credit cards, we decline to reach the merits of this argument
 
 
 [9]
 We reject the government's argument that the Telephone Company is not within the intended scope of § 7609 because it keeps records of its own transactions with the taxpayer rather than the taxpayer's transactions with others. Even if the language of this report could limit the plain terms that were eventually inserted in the statute, we observe that telephone companies, much like banks, routinely keep records of their customers' dealings with others. Indeed, given the lack of claimed deductions for telephone expenses by Tuccio, it appears that IRS is interested in Tuccio's telephone contacts with other persons
 
 
 [10]
 It is perhaps noteworthy that our reading of § 7609(a)(3)(C) comports with the original interpretation of that section adopted by IRS. In July 1978, IRS issued a Manual Supplement concerning Changes in the Use of the Administrative Summons Resulting From the Tax Reform Act of 1976. Section 3.02 of the Supplement contained the following discussion of the term "third-party recordkeeper":
 The procedures in IRC Section 7609 apply generally to situations in which the recordkeeper makes or keeps records of the business transactions or affairs of a person identified in the description of the records contained in the summons. All persons who extend "credit through the use of credit cards or similar devices" fall within the scope of these procedures notwithstanding the fact that the principal business of that person may be something other than the issuing of credit cards. For example, telephone companies and others such as retail stores and oil companies who extend credit through their own credit cards would be considered "third-party recordkeepers." (Emphasis added.)
 Consistent with this interpretation, IRS served § 7609 notices on the present taxpayer and on others; and in at least one enforcement proceeding it described the New York Telephone Company as a third-party recordkeeper. United States v. Knickerbocker Federal Savings and Loan Ass'n, et al., No. M-18-304 (S.D.N.Y.1979). In the present case, as noted above, IRS has recanted this interpretation. An IRS manual of course does not have the effect of law, especially where, as here, the issue concerns the applicability of federal law. See Carpenter v. United States, 495 F.2d 175 (5th Cir. 1974); Adler v. Commissioner, 330 F.2d 91 (9th Cir. 1964). Nevertheless, we find the prelitigation interpretive statements of the agency charged with carrying out the law to be informative.