682 F.2d 313
 82-2 USTC P 9438
 UNITED STATES of America and John Kennedy, Special Agent,
Internal Revenue Service, Petitioners-Appellees,
v.
NEW YORK TELEPHONE COMPANY and Howard Baskin, Respondents-Appellants,
and
Marilyn Sheldon, Taxpayer-Intervenor-Appellant.
 Nos. 801, 802 and 746, Docket 81-6204, 81-6242 and 81-6244.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 8, 1982.
Decided June 11, 1982.
 
 Jane E. Booth, Asst. U. S. Atty., New York City (John S. Martin, Jr., U. S. Atty., S. D. N. Y., David M. Jones and Richard N. Papper, Asst. U. S. Attys., New York City, of counsel), for petitioners-appellees.
 Harold S. Levy, New York City, for respondents-appellants.
 Paul Friedman, New York City, for taxpayer-intervenor-appellant.
 Before OAKES, NEWMAN and PIERCE, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 On October 8, 1980, in the course of an investigation of the income tax liabilities of Marilyn Sheldon, the Internal Revenue Service ("I.R.S.") served the New York Telephone Company ("telephone company") with a summons seeking the production of all billing records for three telephone numbers used by Sheldon.[1] On October 10, 1980, the I.R.S. notified Sheldon of the service of the summons, and on October 21, 1980, Sheldon's attorney notified the telephone company not to comply with the summons. Subsequently, in August 1981, the I.R.S. filed a petition in the United States District Court, 528 F.Supp. 175, for the Southern District of New York, seeking to enforce the summons in a summary proceeding. The telephone company appeared in that proceeding and opposed enforcement, asserting that the taxpayer had notified it not to comply with the summons. On or about September 21, 1981, Sheldon moved to intervene in the enforcement proceeding. She opposed enforcement claiming that the demand for records was not made in good faith, was overbroad, and that the records sought were irrelevant to the investigation being conducted. She argued that she was entitled to intervene pursuant to 26 U.S.C. § 7609(a)(3) (C), a statute which provides that when a summons is served on a "third-party recordkeeper" and requires production of records of the business transactions or affairs of a person other than the recordkeeper, that person has a right to be notified of the service of the summons; to stay compliance with the summons by serving a notice not to comply within fourteen days after receiving notice of its service; and to intervene in any subsequent proceeding with respect to enforcement of the summons.
 
 
 2
 The statute includes within the definition of a "third-party recordkeeper" "any person extending credit through the use of credit cards or similar devices."[2] Sheldon argued that she had standing to intervene because the telephone company is a "third-party recordkeeper" which extends credit "through the use of credit cards or similar devices." She made this claim although she conceded that she was not the holder of a telephone company credit card, and that none of the billing records requested included records of telephone calls charged with a credit card.
 
 
 3
 On October 23, 1980, Judge Palmieri issued a memorandum decision and order denying Sheldon's motion to intervene and granting enforcement of the summons. Both Sheldon and the telephone company have appealed.
 
 
 4
 On this appeal, therefore, the Court is confronted with the issue of the meaning and breadth of coverage of the term "third-party recordkeeper" as defined in 26 U.S.C. § 7609(a)(3)(C). In resolving this question we must look at the context in which this section is found in the Internal Revenue Code, and the intent that lay behind its enactment.
 
 
 5
 Section 7602(2) of the Internal Revenue Code provides that the I.R.S. may require "any person having possession, custody, or care of books of account containing entries relating to the business of (a) person liable for tax" to produce those records and give testimony, provided the records and testimony are "relevant or material" to the I.R.S.'s inquiry into the correctness of a tax return. This statute imposes "a broad testimonial obligation" upon such persons. United States v. Euge, 444 U.S. 707, 714, 100 S.Ct. 874, 879, 63 L.Ed.2d 141 (1980).[3]
 
 
 6
 Section 7604 of the Internal Revenue Code provides, in turn, for the enforcement of an I.R.S. summons through a proceeding in the federal district court, which may use its contempt powers to compel compliance. A taxpayer does not have standing to intervene as a matter of right in such an enforcement proceeding against a party in possession of records of the taxpayer "simply because it is his tax liability that is the subject of the summons." Donaldson v. United States, 400 U.S. 517, 530, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). Thus, prior to the tax code amendments adopted in 1976, only the recordkeeper, who generally had no stake in protecting the privacy rights of the taxpayer, had standing to challenge claimed intrusions into those rights by the I.R.S.
 
 
 7
 In 1976, section 7609 of the Internal Revenue Code was enacted by Congress to provide limited protection against unreasonable infringements upon the civil rights of taxpayers through the I.R.S.'s use of thirdparty summonses. See (1976) U.S.Code Cong. & Ad.News at 3797. This limited protection took the form of the amendment granting the taxpayer standing to intervene and contest the enforcement of such a summons, and reflected the recognition that the taxpayer is the true interested person in an enforcement proceeding involving a third-party recordkeeper. See United States v. Desert Palace, Inc., 79-1 U.S.T.C. P 9296 (D.Nev.1979); (1976) U.S.Code Cong. & Ad.News at 3798-3800. The amendment was designed, however, to give the taxpayer only a procedural right to intervene; it did not in any way expand either the taxpayer's substantive rights or the grounds on which enforcement of an I.R.S. summons might be resisted.
 
 
 8
 Section 7609(a)(3) lists six categories of persons which it designates as "third-party recordkeepers". Included among these is the category which the appellants here argue includes the telephone company: persons "extending credit through the use of credit cards or similar devices." 26 U.S.C. § 7609(a)(3)(C). However, as the Court pointed out in United States v. New York Telephone Company, 644 F.2d 953, 957 (2d Cir. 1981), the statute does not provide any definition of either "credit cards" or "similar devices". We do, however, at this juncture, have the benefit of this Court's ruling in that case. Therein, the Court concluded that "the Telephone Company extends credit by means of credit cards, and is thus a 'third-party recordkeeper' within the plain meaning of § 7609(a)(3)(C)." Id. at 958. The Court also held that the taxpayer-intervenor in that case, who was a telephone company credit cardholder, was entitled to intervene in the proceeding brought by the I.R.S. to enforce its summons. The Court stated that "(i)n light of the credit card operations of the Telephone Company ..., the fact that Tuccio is a credit cardholder, and the fact that the summons is broad enough to include records relating to Tuccio's credit card transactions, we conclude that § 7609 was applicable and that Tuccio should have been allowed to intervene in the compliance proceeding." Id. at 960.
 
 
 9
 In New York Telephone, supra, the telephone company argued that it should be considered a "third-party recordkeeper", as that term is defined in 26 U.S.C. § 7609(a)(3)(C), for three reasons: first, because it extends credit through the use of credit cards; second, because certain of its policies, such as "third number billing" (that is, permitting customers to use one telephone to call a party at a second number, and bill the charges to a third number) constitute the extension of credit through a device similar to a credit card; and third, because its policy of billing its customers one month in arrears is an extension of credit through a device "similar" to a credit card. Since the New York Telephone Court found merit in the first argument, and since the taxpayer in that case had a telephone company credit card, the Court found that it did not need to rule on the merits of the second and third arguments in order to reach its decision. Nevertheless, it indicated that it "reject(ed)" the third argument and was "skeptical" about the second. In this case, the taxpayer-intervenor does not have a telephone company credit card. Therefore, we must now decide whether a taxpayer's right to intervene in a proceeding to enforce an I.R.S. summons served upon the telephone company and seeking the production of the taxpayer's billing records is dependent upon the taxpayer's status as a telephone company credit cardholder.
 
 
 10
 We believe that both the statute's remedial purpose: to "improve the administration of the tax laws, particularly in the (sic) terms of protecting the taxpayers' rights vis a vis the government," (1976) U.S.Code Cong. & Ad.News at 2898, and the fact that the statute does not give the taxpayer any new substantive rights-but merely provides the taxpayer with a procedural right to intervene to assert claims of irrelevance, immateriality, or privilege, which otherwise only the recordkeeper would have standing to assert-dictate that the statute, where ambiguous in its coverage, should be broadly construed.[4]
 
 
 11
 Although section 7609(a)(3)(C) of the Internal Revenue Code provides that "any person extending credit through the use of credit cards or similar devices" is a third-party recordkeeper, it is clear that an entity's status as a third-party recordkeeper in relation to some or all of its retail customers does not make it a third-party recordkeeper with regard to records in its possession which are created and kept in a quite different capacity and in the course of entirely different types of transactions. Thus, the court in United States v. Exxon Co., 450 F.Supp. 472 (D.Md.1978), held, correctly we believe, that Exxon's lessor had no right to notice and no standing to intervene in an action brought to enforce an I.R.S. summons for the production of records relating to payments made by Exxon as the lessee of land on which it operated a gasoline service station. In so holding, the court rejected the argument that, because Exxon issued credit cards to its retail customers, it was a "third-party recordkeeper" with regard to any records in its possession, regardless of their type, which reflected transactions with anyone other than itself. Thus, the court in Exxon stated:
 
 
 12
 "(T)he records sought by the instant summons are not the credit records of movants and do not appear to involve directly the type of business transactions contemplated in the statute. The records sought more directly involve the business transactions of Exxon-its lease of a property from movants and its payments of rent on the same property. Although Exxon does make and keep the records of the transactions of other persons in carrying out its functions as an issuer of credit cards, the records at issue here more properly involve Exxon's own transactions and would not be subject to the notice rule. For the court to hold otherwise would necessitate a determination on the part of this court that the fact that a person or company issues credit cards to some persons automatically places all records of any transactions of any nature of that person or company within the notice requirement of Section 7609." Id. at 477.
 
 
 13
 The holdings in United States v. Manchel, Lundy & Lessin, 477 F.Supp. 326, 329 (E.D.Pa.1979), United States v. Ohio Bell Telephone Co., 475 F.Supp. 697 (N.D.Ohio 1978), United States v. Connecticut Motor Club, 79-1 U.S.T.C. P 9141 (D.Conn.1978), and United States v. J. Joseph Gartland, Inc., 79 F.R.D. 148 (D.Md.1978) are predicated on the same ground. In each of these cases the court held that the taxpayer-intervenor was not entitled to notice of a summons, and was not permitted to intervene in an enforcement proceeding, when the types of transactions reflected in the records sought by the I.R.S. were of a type completely different from those which the statute was intended to protect. Here, however, the credit records sought by the I.R.S., and the transactions which they reflect, are of exactly the same type as those which are protected under § 7609 when the taxpayer happens to be a credit cardholder.
 
 
 14
 We agree with this Court's observation in New York Telephone that third-number billing practices alone constitute a questionable basis for a finding that the credit practices of the telephone company fall within the "similar devices" language of § 7609(a)(3)(C). However, in that case the Court was not directly confronted with that issue, and grounded its decision on the credit card issuing practices of the telephone company in conjunction with the intervenor's status as a credit cardholder. Since we are directly confronted here with the question whether the telephone company should be considered a third-party recordkeeper with regard to the billing records of its non-credit card customers, we must reassess the New York Telephone Court's characterization, which was not essential to the outcome of that case. In so doing, we now find that it is not necessary to focus on whether third party billing, standing alone, constitutes a "similar device" under the statute. The telephone company's third-party billing practices must be viewed in conjunction with the credit card issuing and the arrears billing practices of the telephone company, and with the types of transactions that are reflected in the records sought by the summons which the I.R.S. seeks to enforce.
 
 
 15
 The Court does not understand it to be contested that all customer billing records created and kept by the telephone company are virtually identical in both form and content, and reveal essentially the same type of private information about a customer, whether or not that customer holds a telephone company credit card. Therefore, we believe, it follows that the telephone company should be considered a third-party recordkeeper under § 7609(a)(3)(C) in cases involving customers' billing records of the type sought in both New York Telephone and in this case. Any other rule would make the question of standing to assert available defenses to the production of records turn upon the fortuitous possession of a piece of plastic, and the possibility that it was used at some point during the time period for which the records are sought. Such a rule, we think, would elevate the technical form of a transaction over its substance.
 
 
 16
 We therefore hold that where, as here, the telephone company extends credit to customers through the use of credit cards and, additionally, extends similar credit by other means to both its credit cardholders[5] and non-credit cardholders, the records of all such similar credit transactions with its customers, whether or not they were effected through the use of a credit card, are ones as to which a taxpayer has standing to intervene in an action to enforce a third-party summons.[6]
 
 
 17
 It might be argued that all records of two-party transactions should be excluded from the coverage of a statute which, on its face, deals with "third-party recordkeepers." Further, it might be argued along these lines, that in drafting § 7609(a)(3)(C) Congress meant only to include transactions involving records held by credit card companies such as MasterCard, Visa, and American Express, which extend credit in conjunction with transactions in which they are not themselves directly involved in the sale of goods or services, and whose credit records reflect transactions involving two parties separate and distinct from themselves. Such a rule would exclude from the coverage of the statute not only all telephone company records, but also department store credit records of purchases made using a credit card issued by the store, records of gasoline company credit card purchases, and, presumably, even records of purchases made directly from a credit card issuing company such as Visa or MasterCard.[7] Records of such transactions, it could be argued, are the recordkeeper's own records of its own transactions, rather than those of the taxpayer. However, this Court (as well as others, see Exxon, supra; Desert Palace, supra ) has already gone beyond that point and held that records of two-party transactions, effected by use of a credit card, are within the intent of the statute. United States v. New York Telephone, supra at 958. Once the line between two-party and three-party transactions has been crossed it makes little sense to hold that the taxpayer's possession of a credit card is pivotal in deciding which customers of a single credit card issuing entity will, and which will not, have standing to intervene in a proceeding in which the I.R.S. seeks enforcement of a summons for the production of virtually identical types of records. This conclusion finds further support in the fact that the statute speaks solely in terms of the credit card issuers involved and makes no mention whatsoever of the credit cardholders.
 
 
 18
 Further, any records kept by recordkeepers, even companies that are clearly "third-party recordkeepers", (like Visa and MasterCard), are to some extent kept for the recordkeeper's own purposes. For example, Visa obviously keeps a record of the stores from which its cardholders have made purchases in order to document payments due to those stores, and to assure accurate billings of, and payment by, its cardholders.[8] Nevertheless, the statute protects these records from summary production without notice to the taxpayer, because they contain personal and business information which the taxpayer, rather than the recordkeeper, might have an interest in protecting. It is also clear that when personal customer transactions are involved, department store credit records will reflect the types of items a customer has purchased; gasoline company credit card records will reveal purchases of goods as well as patterns of travel around the country; and telephone company records indicate the telephone numbers a customer has called and also the frequency and length of such calls. Thus, including records of these kinds of transactions within the coverage of the statute is consonant with the intent to treat the taxpayer-intervenor as the true defendant in an enforcement proceeding involving a third-party recordkeeper. See Desert Palace, supra at 86,673; (1976) U.S.Code Cong. & Ad.News at 3798-3800.
 
 
 19
 Therefore, upon consideration of the telephone company's credit card operations, viewed in conjunction with its practice of extending similar credit to all of its customers, as well as the type of credit billing records sought by the summons here, we conclude that section 7609 was applicable to the summons herein and that Sheldon should have been permitted to intervene in the enforcement proceeding.
 
 
 20
 The order of enforcement is vacated and the matter is remanded to the district court for proceedings consistent with this opinion.
 
 NEWMAN, Circuit Judge, concurring:
 
 21
 Congress could have enacted a taxpayer notification statute covering any records of a summoned person that concern a taxpayer. It did not do so. Instead it passed a statute covering a summons issued to only designated categories of entities for only a designated category of records. Among the categories of covered entities is "any person extending credit through the use of credit cards or similar devices." 26 U.S.C. § 7609(a)(3)(C) (1976). Since the telephone company issues credit cards, it is plainly eligible to be included in this category. Whether it is actually within the statute's coverage, however, cannot be decided before determining whether the company's records fall within the category of records to which the statute applies: "records made or kept of the business transactions or affairs of any person (other than the person summoned)." § 7609(a)(1)(B).
 
 
 22
 Were the slate clean, I would have thought that Congress's description of covered records excludes any vendor's records of its own sales of products or services to its customers. Such records reflect transactions "of" the person summoned. Of course, they simultaneously reflect transactions of the taxpayer-purchaser, but they remain records of a transaction of the seller, "the person summoned." They are therefore beyond the coverage of a statute that applies to records only of a transaction of a person "other than the person summoned."
 
 
 23
 By covering only records that reflect the taxpayer's transactions and not the recordkeeper's transactions, Congress must have had in mind transactions different from typical two-party vendor-buyer dealings. That this is so becomes evident when one examines the types of entities within the categories of covered recordkeepers, which the statute significantly calls "third-party" recordkeepers. Though anxious to assure some added procedural protection against unwarranted invasions of privacy, Congress covered lawyers, § 7609(a) (3)(E), but not doctors, banks, § 7609(a)(3)(A), but not insurance companies. Though all of these entities maintain records with significant privacy interests, only the entities covered by the statute keep records of transactions that can realistically be thought of as transactions of the taxpayer and not of the recordkeeper. The Senate Report underscores this point by noting that "a third party recordkeeper is generally to be a person engaged in making or keeping the records involving transactions of other persons." S.Rep.No.94-938, 94th Cong., 2d Sess. 369, reprinted in (1976) U.S.Code Cong. & Ad.News 3439, 3798.
 
 
 24
 The entities covered by the statute are those that can be expected to have records of third-party transactions. The attorney has a record of the taxpayer's legal transactions with a third party; the bank has a record of the taxpayer's payments to or receipts from a third party. Some entities that extend credit through the use of credit cards also have records of third-party transactions that can be said to be transactions of a person other than the person summoned. This occurs when the credit card issuer is an entity like Visa or Mastercharge, which has records of the taxpayer's transactions with third parties. In my view the statute has no application to records of two-party transactions between a credit card issuer like the telephone company and its own customers. Though the telephone company is an issuer of credit cards, and therefore eligible to be within the terms of § 7609(a)(3), it is not subject to the statute because in fact it is not a third-party recordkeeper, i.e., it does not maintain records of third-party transactions.
 
 
 25
 Limitation of § 7609 to the third-party transactions of credit card issuers not only is indicated by the statutory description of covered records but also reflects the interpretation most consistent with a rational Congressional purpose. If the statute were read to cover records of two-party transactions, it is difficult to think of any rational reason why Congress would have required notification to taxpayers when records of their purchases were summoned from sellers who extended credit by normal end-of-the-month billing. Indeed, no apparent reason exists for distinguishing sellers who sold for cash. Nothing in the legislative history suggests that Congress was distinguishing among sellers, depending upon whether or not they sold by means of credit cards.
 
 
 26
 What Congress seems to have been trying to accomplish is to afford taxpayers notice of those instances when the Internal Revenue Service seeks a set of records that can be expected to obtain a wide variety of personal information about the taxpayer. Records of any sale of goods or services reveal something about the person who made the purchase, but Congress would not likely have thought that a purchaser should get notice only when he makes a purchase by using a credit card. However, in the interest of permitting objection to wholesale requests for revealing documents, it does make sense for Congress to have required notice whenever a summons is issued to an entity that customarily keeps records of a taxpayer's transactions with others. That purpose led Congress to identify entities like lawyers and stockbrokers that customarily have records of a person's third-party transactions. A credit card issuer exemplifies a likely source of such records when it is Visa or Mastercharge, but not when it is a corner liquor store that happened to make some sales by means of its own credit card as an alternative to monthly billing.[1]
 
 
 27
 Toll call records, potentially revealing a wide range of a person's activity, may well be the sort of records that should occasion notice to a taxpayer when the IRS inspects them. But the statutory scheme Congress selected to afford notice of IRS inspection of revealing records consists of including only records of transactions that are not those of the person summoned and then identifying those entities likely to have such records. The telephone company, as a seller of service to a customer, has records of its own transactions and therefore does not fall within the coverage of § 7609.
 
 
 28
 However, as Judge Pierce notes, this Court's decision in United States v. New York Telephone Company, 644 F.2d 953 (2d Cir. 1981), extended coverage of the statute to records of the two-party transactions of the telephone company with its customers.[2] Despite my disagreement with that decision,[3] I am obliged to accept it and therefore face the issue of whether the records of a credit card issuer are within the statute only when they reflect credit card transactions or whenever they reflect any credit transactions. That issue is problematical for me because there is no sure basis for determining where Congress intended to draw the line once the statute has been extended beyond what I consider to be its intended scope of coverage. On balance, I agree with Judge Pierce that, once an entity is covered by the statute in some of its credit card transactions with its own customers, it makes little sense to exclude coverage of records of a customer who has not used his credit card for a particular credit transaction or even a credit customer who does not have a credit card. I think we were in error in New York Telephone, but if that decision correctly divined what Congress had in mind, then I agree that Congress would not have wanted this case decided differently. I therefore concur in Judge Pierce's opinion for the Court.
 
 
 
 [1]
 The summons requested:
 "1. Statement of billings (toll and local usage) and payments received for the period January 01, 1974 through December 31, 1978 for any and all telephone numbers assigned to 120 Mimosa Drive, Roslyn, New York including but not limited to: (516) 621-9238;
 
 
 [2]
 Statement of billings (toll and local usage) and payments received for the period January 01, 1974 through December 31, 1978 for any and all telephone numbers assigned to 1 Jefferson Court, Roslyn Heights, New York including but not limited to: (516) 484-5660;
 
 
 [3]
 The identity of subscribers to whom the above telephone numbers have been assigned during the period 1974 through 1978;
 
 
 [4]
 A record of any and all toll calls emanating from the above numbers for all months for which records have been maintained to date of summons; and
 
 
 [5]
 A record of any and all toll calls emanating from any and all telephone numbers assigned to 271-19D Grand Central Parkway, Floral Park, New York, including but not limited to (212) 488-0950 for all months for which records have been maintained to date of summons."
 
 
 [2]
 26 U.S.C. § 7609 provides, in pertinent part, that:
 § 7609. Special procedures for third-party summonses
 (a) Notice.-
 (1) In general.-If-
 (A) any summons described in subsection (c) is served on any person who is a third-party recordkeeper, and
 (B) the summons requires the production of any portion of records made or kept of the business transactions or affairs of any person (other than the person summoned) who is identified in the description of the records contained in the summons,
 then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 14th day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain directions for staying compliance with the summons under subsection (b)(2).
 (3) Third-party recordkeeper defined.-For purposes of this subsection, the term "third-party recordkeeper" means-
 (A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law, any bank (as defined in section 581), or any credit union (within the meaning of section 501(c)(14)(A));
 (B) any consumer reporting agency (as defined under section 603(d) of the Fair Credit Reporting Act (15 U.S.C. 1681a(f)));
 (C) any person extending credit through the use of credit cards or similar devices;
 (D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(4)));
 (E) any attorney; and
 (F) any accountant.
 (b) Right to intervene; right to stay compliance.-
 (1) Intervention.-Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604.
 (2) Right to stay compliance.-Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to stay compliance with the summons if, not later than the 14th day after the day such notice is given in the manner provided in subsection (a) (2)-
 (A) notice in writing is given to the person summoned not to comply with the summons, and
 (B) a copy of such notice not to comply with the summons is mailed by registered or certified mail to such person and to such office as the Secretary may direct in the notice referred to in subsection (a)(1).
 
 
 [3]
 Generally no traditional privilege or privacy interest is implicated by a demand for telephone billing records, since a person has no legitimate expectation of privacy in the telephone numbers dialed on his telephone. Smith v. Maryland, 442 U.S. 735, 742-46, 99 S.Ct. 2577, 2581-83, 61 L.Ed.2d 220 (1979)
 
 
 [4]
 Courts have expressed their concern that the statute is ambiguous and that difficulties involved in its interpretation may lead, at times, to anomalous results. See, e.g., United States v. Shivlock, 459 F.Supp. 1383, 1384 (D.Colo.1978), aff'd sub nom. United States v. Income Realty and Mortgage, 612 F.2d 1224 (10th Cir. 1979), cert. denied sub nom. West v. United States, 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 809 (1980). ("These three consolidated cases are a part of the continuing saga of the headaches stemming from the enactment of the so-called third party recordkeepers statute, 26 U.S.C. § 7609.")
 
 
 [5]
 We note that the Court in New York Telephone, supra, did not limit its holding to allow intervention only as to records relating to credit card calls
 
 
 [6]
 In United States v. Desert Palace, Inc., 79-1 U.S.T.C. P 9296 (D.Nev.1979), the court went even further. In that case Caesar's Palace casino issued plastic embossed cards to persons approved for credit, and, upon presentation of those cards, both extended credit, and cashed personal checks for those individuals. The I.R.S. served Caesar's Palace with a summons for all financial records pertaining to all checks cashed and other transactions with the taxpayers who then sought to intervene. In Desert Palace the court stated:
 "In the case at bar, the Government in fact seeks records of any transaction whereby Caesars Palace advanced money to either or both of the Taxpayers. It is true that the Government is primarily interested in transactions involving an exchange of money for a negotiable instrument-i.e., non-credit transactions. And, if this was all that the Government was looking for by way of this summons, I would agree that the Exxon case would be controlling. However, the summons is so broadly worded that a reasonable person would conclude that the Government also was looking for records of credit transactions between Caesars Palace and the Taxpayers. Accordingly, Exxon is distinguishable on that basis." Id. at 86,672. (Footnote omitted) (emphasis in original).
 
 
 [7]
 We note the apparently increasing activities by credit card issuers such as MasterCard and American Express themselves in marketing goods and services, which run the gamut from life insurance policies to down jackets and luggage, by sending advertisements for those items to their credit card customers along with regular billings for credit card purchases from others
 
 
 [8]
 It could also be argued that when a Visa credit cardholder makes a purchase at a store that accepts his card and his signature in lieu of cash, he draws directly upon a service from Visa-an extension of credit which makes the credit transaction possible, in the same way that a telephone company customer directly draws upon credit from the telephone company when he makes a telephone call (other than from a coin-operated telephone), whether by use of a credit card, third-party billing, or arrears billing
 
 
 [1]
 The legislative history of this portion of the statute supports the view of a rather narrow Congressional purpose focused on third-party summonses that significantly implicate privacy interests because they seek particularly confidential material or are particularly comprehensive in scope. The original House bill, which did not use the term "third-party recordkeeper," described a broad class comprising "any person" who has records relating to the business of transactions of another specified party; if any such records were sought, notice to the other party was required. H.R. 10612, 94th Cong., 2d Sess. § 1211 (1976), U.S.Code Cong. & Admin.News 1976, p. 3202. The Senate amended the bill, however, to provide for notice only if the summons was served on "any person whose business consists, in whole or in part, of making or keeping records of the business transactions or affairs of other persons." H.R. 10612, as amended, 94th Cong., 2d Sess. § 1205 (1976), U.S.Code Cong. & Admin.News 1976, p. 3798. The accompanying Senate Report noted that "a third party recordkeeper is generally to be a person engaged in making or keeping records involving transactions of other persons. For example, an administrative summons served on a partnership, with respect to records of the partnership's own transactions, would not be subject to these rules." S.Rep.No.938, 94th Cong., 2d Sess. 369, reprinted in (1976) U.S.Code Cong. & Ad.News 3439, 3798. The language of the Senate amendment did not indicate who might come within the description of a "person whose business consists ... of making or keeping records of the business transactions or affairs of other persons," but the Senate Report mentioned "a bank, brokerage house, accountant, attorney, or other third-party record keeper," id., plainly viewing such entities as illustrative of the class that the committee had in mind. These entities were then listed in the version of the bill that emerged from conference, which became the present statute
 The Conference Report explains the new version as follows:
 The conference agreement follows the Senate amendment. In addition, the agreement clarifies the definition of a third-party record keeper, limiting this category to attorneys, accountants, banks, trust companies, credit unions, savings and loan institutions, credit reporting agencies, issuers of credit cards, and brokers in stock or other securities.
 H.R.Conf.Rep.No.1515, 94th Cong., 2d Sess. 486, reprinted in (1976) U.S.Code Cong. & Ad.News 4118, 4190 (emphasis added). The Senate amendment, with its specification of those in the "business ... of making or keeping records," is said to be followed, but it is clarified by the addition of more detail to the Senate Report's enumeration of likely third-party recordkeepers. Here is the first mention of credit card issuers, part of a "clarification" of the definition of third-party recordkeeper as those whose business consists of keeping records of the transactions of other persons and included among a group of other institutions having in common a role as repositories of potentially sensitive information. This evolution of the language describing covered entities, coupled with the language describing covered records, reinforces the view that "issuers of credit cards" in the Conference Report and "person extending credit through the use of credit cards or similar devices" in the statute should be interpreted consistently with the class of entities Congress was covering. That class, as the Senate Report states, does not include "partnership(§ that keep) records of the partnership's own transactions," S.Rep.No.938, supra, and should not include telephone companies that keep records of their own transactions with customers.
 
 
 [2]
 The opinion in New York Telephone explicitly reckoned with and rejected the Government's argument that the telephone company "is not within the intended scope of § 7609 because it keeps records of its own transactions with the taxpayer rather than the taxpayer's transactions with others." 644 F.2d at 958 n.9. Though the argument was rejected in a footnote, the resulting extension of § 7609 to records of transactions between the telephone company and its customers was central to the Court's holding
 
 
 [3]
 A limited interpretation of § 7609 to exclude telephone company records of transactions with its own customers was rejected in New York Telephone because of the "plain terms" of the statute and because toll call records reflect customers' "dealings" with others. 644 F.2d at 958 n.9. In my view, neither reason is persuasive. The plain terms of the statute preclude coverage of toll call records since these records reflect transactions of the telephone company and are therefore not records of transactions of a person "other than the person summoned." Nor do the transactions cease to be the transactions "of" the telephone company simply because the service the telephone company sells to the taxpayer permits him to deal with a third party (or as the company prefers to say, to "reach out and touch someone"). If the category of covered records were to include any records of a customer that reflect "dealings" with a third party, it would cover records of a department store customer's purchases sent to friends, a travel agency customer's trips to hotels, and numerous other instances where the product or service sold by use of a credit card places the customer in some form of contact with a third person. There is no reason to believe that Congress intended that records of all such transactions should be covered whenever the goods or services were sold by an issuer of credit cards. On the contrary, Congress included credit card issuers within the category of third-party record-keepers because some of those entities, like Visa and Mastercharge, typically collect records of the sort covered by the statute, records that are not transactions "of" the recordkeeper. It is the statutory definition of covered records that limits its scope to true third-party recordkeepers like Visa and Mastercharge and precludes coverage of credit card issuers like the telephone company that sell goods and services to their customers in two-party transactions that are not transactions "of any person (other than the person summoned)" (emphasis added)