Ramona J. CARNEY, Plaintiff,

v.

Marvin T. RUNYON, Jr., Postmaster General, United States Postal Service, Defendant.

Civ. A. No. 92–2403–GTV.

United States District Court, D. Kansas.

March 14, 1994.

William C. Nulton, Shughart, Thomson & Kilroy, Kansas City, MO, for plaintiff.

Robert A. Olsen, Office of U.S. Atty., Kansas City, KS, David F. Wightman, U.S. Postal Service, Law Dept., Birmingham, MI, for defendant.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This case is before the court on the Cross–Motions for Summary Judgment (Docs. 20 and 22) filed by the parties to this action. At issue is whether plaintiff Carney is entitled to an award of statutory attorney fees under 42 U.S.C. § 2000e–5(k) based upon the settlement of an Equal Employment Opportunity [EEO] complaint. Plaintiff contends that she is entitled to an award of attorney fees under the statute because she received a favorable settlement of her EEO complaint, as well as a settlement of a related union grievance. Defendant argues, on the other hand, that plaintiff is not a "prevailing party" qualified to recover statutory attorney fees because she actually received her only remedy pursuant to a union grievance procedure. For the reasons set forth in this memorandum and order, plaintiff's motion for summary judgment is granted and defendant's motion is denied.

## I. SUMMARY JUDGMENT STANDARDS

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only be a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## II. FACTUAL BACKGROUND

The facts relevant to this action are not controverted and have been set out in a stipulation of facts agreed to by both parties:

Plaintiff Ramona Carney was an employee of the United States Postal Service and a member of the American Postal Workers Union. Pursuant to a collective bargaining

agreement applicable to plaintiff, grievance and arbitration procedures exist which contain a three step appeal procedure culminating in binding arbitration.

On November 26, 1990, plaintiff received a Notice of Removal effective January 4, 1991, alleging that she had falsified her employment application. Plaintiff filed a union grievance alleging that the removal was without just cause, and on December 5, 1990, a "Step 1" grievance meeting was held between Postal Service supervisor Ron McCay and APWU Local 890 President Richard Tyrel.

On December 18, 1900, a "Step 2" meeting on the grievance was held between Postmaster Luther Brewer and Tyrel. On December 19, 1990, Brewer sent a letter to Tyrel denying the grievance. On December 26, 1990, Tyrel appealed the grievance to "Step 3."

On March 13, 1991, plaintiff retained attorney William Nulton to represent her in connection with her employment dispute with the Postal Service.

On April 25, 1991, Brewer sent plaintiff a letter that stated: "This is to inform you that your removal from the Postal Service is rescinded. You will be placed back on the rolls effective January 4, 1991, your previous effective removal date." On April 20, 1991, however, plaintiff received a memorandum signed by Brewer stating that although she was returned to the rolls of the Postal Service on January 4, 1991, a report of the Office of Worker's Compensation Programs and other relevant medical evidence precluded her from returning to work then or now. The memorandum indicated that all medical evidence or record pointed to a pre-existing physical condition that precluded plaintiff from performing her job. The memorandum went on to state that plaintiff would be placed on the rolls of the Postal Service in Leave Without Pay status from January 4, 1991, forward and that plaintiff should not report for work until directed.

On May 8, 1991, attorney Nulton advised plaintiff to make a claim of handicap discrimination under EEO and her union grievance procedures. On May 9, 1991, plaintiff telephoned the Postal Service EEO Counselor to request counseling on a claim of physical handicap discrimination and age discrimination. On May 10, 1991, plaintiff left a further message with the EEO Counselor indicating that attorney Nulton was representing her on her claim.

On May 13, 1991, the last of several "Step 3" meetings on plaintiff's initial union grievance was held between Thomas Brasser, Acting Manager of Labor Relations of the Wichita Division of the Postal Service, and William Wells, National Business Agent for the APWU. Brasser and Wells reached a settlement of the initial grievance which provided in pertinent part that:

> The notice of removal issued to the grievant has been rescinded. The grievant will receive back pay for the period December 28, 1990 until the date she received the letter dated April 39, 1991 (Certified No. P 583540509)....

> The above constitutes a full and complete settlement of the subject case and resolves any and all issues related thereto.

On May 13, 1991, plaintiff requested permanent light duty work under the provisions of her national union agreement. Plaintiff's request was denied by Brewer on May 15, 1991.

During May and June, 1991, plaintiff pursued several union grievances based upon the denial of her request for light duty work and the Postal Service's refusal to allow her to return to work. Also in June, plaintiff had an initial interview with the Postal Service EEO Counselor and notified the Postal Service in writing that Nulton was representing her.

In July, 1991, plaintiff consulted with attorney Nulton concerning her EEO claim, and on July 24, 1991, plaintiff filed her formal EEO complaint. On August 14, 1991, the Postal Service issued a Final Agency Decision on a portion of plaintiff's formal EEO complaint. In this decision the Postal Service denied that the April 30, 1991, letter from Brewer to plaintiff was a notice of removal.

On August 29, 1991, two of plaintiff's union grievances were appealed to arbitration by the APWU. Thereafter, both plaintiff's EEO

complaint and her union grievances were pursued by plaintiff and her attorney.

On December 5, 1991, the Office of Federal Operations of the EEOC issued a decision upholding the Postal Service Final Agency Decision rejecting that portion of plaintiff's EEO complaint in which she alleged that the April 30, 1991, letter was a notice of removal.

On January 14, 1992, plaintiff informed her attorney that the Postal Service, as a settlement of two of her union grievances, would agree to plaintiff's reinstatement to work and an award of back pay. On February 3, 1991, a settlement was actually reached on those grievances which provided in part that plaintiff would receive back pay for the period of time between April 30, 1991, to January 14, 1992. Plaintiff's attorney did not participate in this settlement.

On February 27, 1992, plaintiff and attorney Nulton discussed a Postal Service proposal to settle her EEO complaint. On March 5, 1991, after consultation with her attorney, plaintiff arranged for her EEOC hearing on her EEO Complaint to be put on hold.

On April 10, 1992, plaintiff signed a settlement of her EEO Complaint. On April 12, 1992, her attorney also signed the settlement document provided by the Postal Service. The settlement provided as follows:

### SETTLEMENT OF EEO DISCRIMINATION COMPLAINT

I, Ramona J. Carney, do hereby voluntarily withdraw my formal EEO complaint filed on July 24, 1991, based upon the stipulation(s) that:

1. Pursuant to the pre-arbitration settlement dated February 3, 1992, you will be returned to duty on January 14, 1992. Further, you will receive back pay for the period of time from April 30, 1991, to January 14, 1992. This back pay will be based upon averaging the number of hours *worked* by the other Part–Time Flexible Distribution Clerks in the Olathe, KS Post Office during the time period indicated above (4–30–91 thru 1–14–92).

2. The Postal Service is unequivocal in its opposition to all forms of discrimination and will not tolerate individuals who consider illegal discriminatory factors as a basis for postal employment decisions or related practices.

3. The award of attorney fees shall be severed from this agreement and processed pursuant to 29 CFR 1613.217(a). All submission [sic] for attorney fees shall be forwarded to the Appeals Review Coordinator, U.S. Postal Service, Chicago, Il 60699–0978.

I fully understand that by agreeing to this resolution, I waive my rights to an oral hearing or any other further appeal of my complaint and that my complaint is now closed. I further state that this agreement is not based on harassment, threats, coercion or intimidation.

In further proceedings thereafter, the Postal Service denied plaintiff's claim for attorney fees and costs for legal services incurred in connection with her EEO complaint. In response to plaintiff's appeal of this denial, the Postal Service stated that "While Ms. Carney received the relief she sought when she initiated her EEO complaint, she has failed to demonstrate that her EEO complaint was the catalyst that motivated the Postal Service to provide any relief."

### III. DISCUSSION

■ Under 42 U.S.C. § 2000e–5(k), "In any action or proceeding under this title ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as a part of the costs...." In order to qualify as a "prevailing party" eligible to recover fees under the statute, plaintiff must show that she obtained an enforceable judgment against the defendant "or comparable relief through a consent decree or settlement." *Farrar v. Hobby,* —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). Here, plaintiff claims that the settlement of her EEO claim makes her a prevailing party.

Defendant argues that plaintiff is not entitled to recover fees under section 2000e–5(k)

for two reasons: First, plaintiff's attorney fees were accrued for work done by her attorney on union grievances, forums not required to be exhausted by Title VII and for which attorney fees may not therefore be recovered. Second, defendant argues that plaintiff is not actually a "prevailing party" because she obtained her only remedy in a union grievance proceeding and has failed to prove that her EEO complaint was the catalyst for any relief.

There is no dispute that plaintiff obtained the relief that she sought when she initiated her EEO complaint against the Postal Service. At issue is simply whether or not plaintiff obtained that relief as a result of the EEO action, or whether she obtained her relief only as a result of separate union grievance procedures. The court concludes that because plaintiff obtained settlements with defendant on both her union grievances and her EEO claim, defendant cannot now claim that she is not a prevailing party in the EEO matter and is not entitled to attorney fees under section 2000e–5(k) for work done in pursuing her EEO claim.

It would be unfair to allow the defendant to argue that plaintiff is not a prevailing party simply because the defendant chose to settle a union grievance prior to settling a EEO claim filed on the same grounds and in which plaintiff sought identical relief. The court finds analogous the recent case of *Harper v. Walters*, 822 F.Supp. 817 (D.D.C.1993), where collateral administrative proceedings were closely tied to a discrimination claim. In *Harper*, plaintiff was deemed to be a prevailing party entitled to recover attorney fees under section 2000e–5(k) even though there had been no adjudication or settlement of his discrimination claim, but instead there was a settlement of a related retirement eligibility issue. *Id.* at 817.

The *Harper* court based its decision to award plaintiff attorney fees on the following factors: (1) plaintiff obtained the relief he sought; (2) settlement agreements "do not necessarily reflect the merits of the underlying claim, but frequently depend on extrinsic, strategic considerations"; and (3) the discrimination claims and the retirement eligibility claim were closely tied together; and

the extensive administrative and judicial proceedings in this case were necessary for plaintiff to obtain the relief he sought. *Id.*

The three factors present in the *Harper* case are also present here. Moreover, in the present case plaintiff actually obtained a favorable settlement of her EEO complaint in addition to the settlement of her union grievances. In another analogous case, a plaintiff was awarded attorneys fees for work done in connection with an EEO complaint even though an informal, non-Title VII administrative grievance proceeding had been pursued first. *See Smith v. Heckler*, No. CA 83–2976, 1984 WL 1067 (D.D.C. Sept. 6, 1984). In that case, plaintiff's filing of an EEO complaint automatically stayed the grievance proceeding. *Id.* at *2. This court does not believe that the fact that the grievance proceeding and the EEO complaint were pursued simultaneously in the present case should preclude plaintiff from obtaining a similar outcome to that of the *Smith* case.

For the foregoing reasons, the court concludes plaintiff is entitled to an award of attorney fees under section 2000e–5(k). However, plaintiff will only be awarded attorney fees for attorney services rendered in direct relation to her EEO complaint. Attorney services rended in non-Title VII administrative proceedings such as union grievance proceedings are not recoverable under section 2000e–5(k). *Smith*, 1984 WL 1067 at *4. Plaintiff's motion for summary judgment is granted and plaintiff's attorney is directed to pursue this award of statutory attorney fees for work done in connection with the EEO complaint in accordance with D.Kan.Rule 220.

IT IS, THEREFORE, BY THE COURT ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 22) is granted.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Doc. 20) is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**