Bryan COX, Plaintiff,

v.

NATIONAL FOOTBALL LEAGUE, an unincorporated association, Paul Tagliabue, Commissioner, and Neil Austrian, President, Defendants.

No. 94 Civ. 5440 (HB).

United States District Court, S.D. New York.

June 21, 1995.

Michael S. Baird, Stotis & Baird, Chicago, IL, for plaintiff.

Jeffrey G. Huvelle, Covington & Burling, Washington, DC, for defendants.

### OPINION AND ORDER

BAER, District Judge.

Plaintiff filed this suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, seeking that defendant National Football League ("N.F.L.") "take some affirmative action to stop fans from subjecting black football players to racial abuse." Pl.'s Letter Br. at 1. The parties stipulated to dismiss the action without prejudice, agreeing that the Court would retain jurisdiction over the matter to determine whether plaintiff is entitled to attorneys' fees as a "prevailing party" in a Title VII case. As explained below, the parties are directed to submit briefs addressing the remaining material facts at issue.

### I. BACKGROUND

Plaintiff Bryan Cox, a member of the National Football League's Miami Dolphins during the 1993 season, claims that when he entered Rich Stadium, the Buffalo Bills' home field, on September 23, 1993 immediately before the start of a game, several fans subjected him to

> an intense barrage of verbal abuse, much of which was based on race. Shouts of "nigger," "monkey," "we will kill you," and a string of racially-based obscenities were heard by several witnesses. One fan had rigged up a black dummy with Bryan's number and the words "Wanted Dead" on it, and then hung the dummy on a noose.

Pl.'s Letter Br. at 1. It was in this context, Cox relates, that he later made an "obscene gesture" to the crowd, *id.*, for which the N.F.L. fined him $10,000.

Defendants, meanwhile, note that prior to the game at issue, Cox had been quoted as stating, " 'I don't like the Buffalo Bills as a team ... I don't like the city, I don't like the people in the city ... I wouldn't care if any of those people fell off the face of the [E]arth ... Don't ask me to name the guys I hate. You can name them all.' " Defs.' Letter Br. at 2. Defendants apparently find it relevant that Cox appealed not only this fine on January 25, 1994, but two others that the N.F.L. had assessed during the 1993 season ("one for kicking a player in the head [and] one for profane and abusive conduct towards game officials," *id.* at 1), as they mention same in their limited, four-page letter brief.

Defendants assert that the January 25 appeal, which was heard in accordance with the applicable collective bargaining agreement, constituted the first time Cox had ever "advised the [N.F.L.] that he had been the target of any racial abuse," Defs.' Letter Br. at 1, as Cox cited the alleged abuse in arguing that it warranted his obscene gesture. While awaiting the ruling, Cox filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 23, 1994. On April 15, 1994, the N.F.L. reduced Cox's fine to $3,000, stating that " 'some of the fan conduct in question was racially offensive and unacceptable, but Bryan's response was inappropriate.' " Pl.'s Letter Br. at 2 (quoting letter of Apr. 15, 1994). Cox obtained a "right-to-sue" letter from the EEOC on April 28, 1994 and filed the instant suit against the N.F.L. on July 27, 1994. The next day, the N.F.L. distributed revised guidelines requiring, among other things, that teams remove from the stadiums fans who take part in "racial taunts."

### II. DISCUSSION

In order to be deemed a "prevailing party" in a Title VII action and thereby

120

obtain attorneys' fees, a plaintiff need not obtain a final judicial adjudication; rather, it is sufficient if the case is settled with plaintiff obtaining a significant part of the relief he or she sought. *Lyte v. Sara Lee Corp.*, 950 F.2d 101 (2d Cir.1991). In addition, the plaintiff must show that his or her actions in pursuing the claim constituted the "catalyst" that caused defendant to provide that relief. *Smith v. University of N. Carolina*, 632 F.2d 316, 347 (4th Cir.1980). Here, the N.F.L. argues that Cox's "vague request" in his complaint that the N.F.L. be required to take some "affirmative action" to eradicate the racially hostile atmosphere does not "entitle [him] to claim credit for the specific revisions made by the League to its security guidelines." Defs.' Letter Br. at 4. Moreover, the N.F.L. claims, it began the process of revising its guidelines soon after it learned of the racial taunts at the January 25 hearing, which demonstrates that the revised guidelines cannot be attributed to Cox's adversarial efforts; instead, it was the mere knowledge of the incident that spurred the N.F.L. to act.

■ The Second Circuit has explained that a "plaintiff may be considered a prevailing party even though the relief ultimately obtained is not identical to the relief demanded in the complaint, provided the relief obtained is of the same general type." *Koster v. Perales*, 903 F.2d 131, 134–35 (2d Cir.1990) (citation omitted). While I do not agree with plaintiff's assertion that the revised guidelines were "precisely the relief sought in [Cox]'s lawsuit," Pl.'s Letter Br. at 2, I do find that removing fans who engage in racial taunting does provide Cox with—at the very least—"the same general type" of relief that he sought.

Whether or not Cox's pursuit of his claim was responsible for bringing about the changed N.F.L. security guidelines presents a closer question. In support of his position, plaintiff quotes from a statement the N.F.L. made after this suit was filed: " 'We have implemented new security measures for the 1994 season to address Bryan's concerns and to supplement previous procedures.... The steps were taken in part because of the incident last season involving Bryan Cox

which highlighted the issue of racial harassment of players and coaches by fans.' " Pl.'s Letter Br. at 2 (quoting statement of Greg Aiello, N.F.L. Dir. of Communications). Although this statement was issued immediately after Cox filed his suit, the statement is not necessarily inconsistent with the N.F.L.'s claim that it took action as soon as it learned of the incident at the January 25 hearing. According to the N.F.L., moreover, an N.F.L. executive began working on the guideline revisions "shortly after" the January 25 hearing and presented the proposals to the teams at the annual spring meeting in May 1994 and to the players at their training camps at an unspecified point in July 1994. Defs.' Letter Br. at 2.

Indeed, the N.F.L. might argue that, at most, it was responding to the appeal Cox made pursuant to the collective bargaining agreement, and not to the EEOC charge, which was not filed until late March, nor this lawsuit, which was not initiated before July. Relevant authority, however, renders this argument unpersuasive. In *Carney v. Runyon*, 848 F.Supp. 153, 157 (D.Kan.1994), the District of Kansas addressed whether a plaintiff had obtained relief "as a result of [her] [EEOC] action, or whether she obtained her relief only as a result of separate union grievance procedures [she had pursued]," as the defendant claimed. The Court held that "[i]t would be unfair to allow the defendant to argue that plaintiff is not a prevailing party simply because the defendant chose to settle a union grievance prior to settling a[n] [EEOC] claim filed on the same grounds and in which plaintiff sought identical relief." *Id.* While the instant case can be distinguished in that the relief Cox sought in his collective bargaining appeal (elimination or reduction of the imposed fine) differed from that which he sought in his EEOC charge and lawsuit (affirmative action to eliminate the racially hostile atmosphere), I find it sufficient that the appeal, the EEOC charge, and this lawsuit all were undertaken as a result of the same incident. Plaintiff will not effectively be penalized for having chosen to pursue the financial relief he sought solely in the collective bargaining setting.

There remains one issue of fact that, if resolved, could be determinative of the instant motion. If plaintiff can establish that the N.F.L. knew, or should have known,[1] of the September 23, 1993 racial taunting incident prior to the January 25 hearing, the N.F.L.'s failure to initiate security guideline revision until after the hearing could support a finding that Cox's appeal[2] motivated the N.F.L.'s ensuing action. If, however, this cannot be shown, the Court will address the difficult question of whether Cox's appeal caused the N.F.L. to take action, as opposed, or in addition, to the N.F.L.'s mere learning of the incident. *See generally Nanetti v. University of Illinois at Chicago,* 867 F.2d 990, 993–94 (7th Cir.1989) (denying attorneys' fees where "the sequence of events indicate[d] that the University was prepared to give [plaintiff] a second chance at tenure before she brought the discrimination suit and hired an attorney," but allowing attorneys' fees where "the parties settled at a salary higher than the salary originally offered to [plaintiff] after [plaintiff]'s attorney intervened and asked for more money on her behalf").

### III. CONCLUSION

Plaintiff will provide his supporting papers addressing the remaining issues of fact discussed above and detailing the amount of fees to which he feels he is entitled to the defendants and the Court by July 5, 1995. Defendants will provide any additional information bearing on their position to the plaintiff and the Court by the same date. In relation to the attorneys' fees request, counsel are advised to consult my recent decision on the subject in *Helbrans v. Coombe,* 890 F.Supp. 227 (S.D.N.Y.1995).

**SO ORDERED.**

1. For example, in his letter brief, plaintiff states that affidavits attesting to the racial taunting were provided to the EEOC when plaintiff filed his charge, some of which came from "Miami Dolphins personnel." Pl.'s Letter Br. at 1. Depending on the positions of responsibility occupied by those individuals and the time at which they learned of the taunting, plaintiff might argue that the N.F.L. had constructive knowledge of the incident long before the January 25 hearing.

2. As explained above, Cox's appeal for this purpose is deemed equivalent to an EEOC charge and lawsuit.