William Whitledge, Tax Div., Appellate Section, Dept. of Justice, Washington, D.C. (Michael L. Paup, Charles E. Brookhart, Attys., Tax Div., Appellate Section, Dept. of Justice, Washington, D.C., Alan H. Nevas, U.S. Atty., D. Conn., New Haven, Conn., Glenn L. Archer, Jr., Asst. Atty. Gen., Washington, D.C., of counsel), for plaintiffs-appellants.

Richard G. Bell, New Haven, Conn. (Alice A. Bruno, Tyler, Cooper & Alcorn, New Haven, Conn., of counsel), for defendant-appellee.

Before KAUFMAN, KEARSE and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

**UNITED STATES of America and Vincent Mercugliano, Special Agent, Internal Revenue Service, Plaintiffs-Appellants,**

v.

**FIRST BANK, Defendant-Appellee.**

**No. 962, Docket 83–6350.**

United States Court of Appeals, Second Circuit.

Argued March 29, 1984.

Decided June 18, 1984.

The United States of America and Vincent Mercugliano, Special Agent of the Internal Revenue Service (alternatively referred to collectively as the "Government"), appeal from an order of the United States District Court for the District of Connecticut, Ellen Bree Burns, *Judge*, entered September 27, 1983, denying a petition to enforce an Internal Revenue Service ("IRS") summons served upon First Bank, a third-party recordkeeper, because the co-owner of the records summoned had not been given notice.

For the reasons set forth below, we reverse.

## I. BACKGROUND

The facts relevant to this appeal are not in dispute. The IRS is conducting an investigation to determine the accuracy of Aristotle Stamatien's financial income tax returns for taxable years 1979, 1980 and

1981. In furtherance of that investigation, on February 17, 1983, Special Agent Mercugliano issued an administrative summons to appellee First Bank ("Bank"), a Connecticut bank and trust company, pursuant to § 7602 of the Internal Revenue Code ("Code"), 26 U.S.C. § 7602(a) (1982). The summons ordered the Bank to produce "[a]ll records pertinent to all financial transactions of ARISTOTLE STAMATIEN at your institution" for the taxable years under investigation. The summons also stated that notice had been served on Stamatien, in accordance with 26 U.S.C. § 7609(a). Although Stamatien elected not to exercise his right under § 7609(b)[1] of the Code to institute suit to challenge the summons, the Bank, by letter dated March 15, 1983, informed the IRS that it was unable to comply with the summons because the account held by Stamatien was held jointly with another individual, and no notice had been given to the co-owner.[2]

On July 29, 1983, the Government filed a petition in the United States District Court for the District of Connecticut, pursuant to §§ 7402(b) and 7604 of the Code, seeking enforcement of the summons. In response to the district court's order to show cause why it should not be compelled to obey the summons, First Bank asserted that since there had been no notice to the co-owner of the subject account, it could not make the requested disclosure without violating Connecticut's Financial Privacy Act. Conn. Gen.Stat.Ann. §§ 36–9j et seq. (West 1981 & Supp.1984). Under that statute, in the absence of (1) customer authorization, (2) service upon the customer of any disclosure request at least ten days prior to the date on which disclosure is to be made, or (3) a waiver of the prior notice requirement for good cause by a court of competent jurisdiction, a financial institution may not disclose its customers' financial records. Id. §§ 36–9k & 36–9l. The Government, in response to First Bank's assertion, argued that under the Supremacy Clause, art. VI, cl. 2, of the United States Constitution, the Federal Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401 et seq., preempts the Connecticut statute. In addition, the Government argued that § 7609(a) of the Code does not require that notice be given to the joint owner of the records summoned since the joint owner was not identified in the summons.

In an opinion filed on September 27, 1983, the district court agreed with the Government that the provisions of the state statute were preempted by 26 U.S.C. § 7609(a). However, after reviewing § 7609 and its legislative history, Judge Burns concluded that Congress did not intend to limit the notice requirement of that section to the taxpayer who is the immedi-

1. Section 7609(b) provides:
   Right to intervene; right to proceeding to quash—
   (1) Intervention.—Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604.
   (2) Proceeding to quash.—
   (A) In general.—Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than the 20th day after the day such notice is given in the manner provided in subsection (a)(2). In any such proceeding, the Secretary may seek to compel compliance with the summons.
   (B) Requirement of notice to person summoned and to Secretary.—If any person begins a proceeding under subparagraph (A) with respect to any summons, not later than the close of the 20-day period referred to in subparagraph (A) such person shall mail by registered or certified mail a copy of the petition to the person summoned and to such office as the Secretary may direct in the notice referred to in subsection (a)(1).
   (C) Intervention; etc.—Notwithstanding any other law or rule of law, the person summoned shall have the right to intervene in any proceeding under subparagraph (A). Such person shall be bound by the decision in such proceeding (whether or not the person intervenes in such proceeding).

2. The Government does not dispute the fact that the bank account for which the disclosure is sought is a joint account. Under Connecticut law, co-holders of a joint account are each considered owners of the entire account, with access to the entire amount therein. See Conn. Gen.Stat.Ann. § 36–3(1) (West 1981).

ate subject of the summons. Therefore, the district judge held that a co-owner who is not the target of an IRS investigation and who is not identified in the summons, must also receive notice of the summons, because that person's interest in the account is coextensive with the taxpayer's interest. Accordingly, the Government's petition to enforce the summons was denied without prejudice to reissuance with the requisite notice. This appeal followed.

## II. DISCUSSION

The Government argues that the district court erred by interpreting § 7609(a) to require the IRS, when it serves an administrative summons on a third-party recordkeeper, to notify the co-owner of the records summoned, when the co-owner is not under investigation and is not identified in the summons. First Bank, on the other hand, urges us to adhere to the district court's interpretation of § 7609(a) and, in addition, contends that Judge Burns erred in holding that the Connecticut Financial Privacy Act is preempted by the notice provisions of the Code. While we agree with Judge Burns that the state privacy statute is preempted by the provisions of the Code, we hold that a co-owner of a joint bank account who is not identified in the summons is not entitled to notice when an administrative summons is served on a third-party recordkeeper.

Pursuant to § 7602 of the Code, the IRS has broad powers to summon information which is relevant to determining whether a taxpayer has complied with the federal tax laws. The IRS may obtain records held by the taxpayer under investigation, or, it may summon, question, and require production from "any person" who holds records "relating to the business of the person liable for [the] tax." 26 U.S.C. § 7602. However, when the IRS seeks to examine a person's records which are in the possession of a third-party recordkeeper,[3] such as

First Bank, it must comply with the special procedures outlined in § 7609, including the notice provisions of § 7609(a). According to § 7609(a)(1):

(1) In general.—If—

(A) any summons described in subsection (c)[e.g., a § 7602 summons] is served on any person who is a third-party recordkeeper, and

(B) the summons requires the production of any portion of records made or kept of the business transactions or affairs of any person (other than the person summoned) *who is identified in the description of the records contained in the summons then notice of the summons shall be given to any person so identified* within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash the summons.

26 U.S.C. § 7609(a)(1) (1982) (emphasis added).

The Government argues that the plain meaning of § 7609(a) requires that notice be given only to the person or persons "identified" in the summons, and since Stamatien was the only person identified therein, it was not required to give notice to any co-owner of Stamatien's account as a pre-condition to obtaining the records summoned. We agree. Paying "strict adherence" to Congress' chosen words, *see Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980), there is nothing in the statute's language that supports a contrary reading.

While the district court herein recognized that a literal interpretation of § 7609(a)

3. The term "third-party recordkeeper" is defined in § 7609(a)(3) to include banks, savings and loans, credit unions, consumer reporting agencies, persons "extending credit through the use of credit cards or similar devices," securities brokers, attorneys, accountants, and barter exchanges. There is no dispute that First Bank is a third-party recordkeeper within the meaning of the statute.

requires that notice be given only to persons identified in the summons, it interpreted the legislative history as compelling a different reading. Upon careful consideration of the variegated legislative history of § 7609(a), we are convinced that Congress intended the literal dictates of the statute to be controlling. Indeed, our reading of the legislative history indicates that Congress did not explicitly address the issue of notice to a joint bank account owner, and that the legislative history provides little guidance on the issue.

Prior to 1976, the IRS had the authority to issue a summons to any person having custody of records relating to the business of a person liable for taxes without notifying the taxpayer or any other person to whose business transactions the summoned records related. S.Rep. No. 938, 94th Cong., 2d Sess. 367–68, *reprinted in* 1976 U.S.Code Cong. & Ad.News 3439, 3796–97; H.R.Rep. No. 658, 94th Cong., 2d Sess. 306–07, *reprinted in* 1976 U.S.Code Cong. & Ad.News 2897, 3202–03. The person whose tax liability was under investigation, but who was not the recordkeeper, had no opportunity to prevent compliance with the summons by asserting possible deficiencies in its issuance. *See* S.Rep. No. 938 at 367–68; H.R.Rep. No. 658 at 306–07. Because Congress believed that the procedures which existed at that time did not protect adequately the civil rights of taxpayers, including their right to privacy, *see* S.Rep. No. 938 at 368; H.R.Rep. No. 658 at 307, it enacted § 7609 as part of the Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1520 (1976). The legislative history accompanying that section demonstrates that Congress was aware that while the third-party recordkeeper could challenge the summons, its interest "in protecting the privacy of the records in question is frequently far less intense than that of the person to whom the records pertain." S.Rep. No. 938 at 369; H.R.Rep. No. 658 at 307. U.S.Code Cong. & Admin.News 1976, pp. 3203, 3798. Therefore, Congress, through § 7609, sought "to provide limited protection against unreasonable infringements upon the civil rights of taxpayers."

*United States v. New York Telephone Co.,* 682 F.2d 313, 315 (2d Cir.1982). Congress apparently believed that the increased involvement of the taxpayer, who had a direct interest in the records sought, would aid in curbing some of the pre-1976 abuses in third-party summons procedure. S.Rep. No. 938 at 368–69; H.R.Rep. No. 658 at 307–08. As we have noted previously, "[t]he new procedure was not designed to give the taxpayer new substantive rights, but only to provide an early opportunity for him, as the person with the greatest interest in protecting the existing substantive rights, to secure recognition of those rights." *United States v. New York Telephone Co.,* 644 F.2d 953, 956–57 (2d Cir. 1981) (footnote and citations omitted). A literal construction of § 7609(a), by requiring the IRS to notify the person identified in the summons as the person whose transactions are to be inspected, and thus providing that person with a right to intervene and challenge the summons, is not at odds with the legislative intent underlying the enactment of the section.

We do not interpret the references in the legislative history to "the taxpayer *and other noticees,*" le.g., S.Rep. No. 938 at 369–70 (emphasis added); H.R.Rep. No. 658 at 308–09, to indicate that all co-owners of the records summoned must be notified. In our view, that language merely indicates that the person identified in the summons may be a person *other than* the taxpayer under investigation. *See* S.Rep. No. 938 at 370 n. 4 ("[T]he protection of these rules extends even if the *person identified* in the summons (*i.e., the noticee*) is not a taxpayer whose tax liability is under current investigation.") (emphasis added); H.R.Rep. No. 658 at 308 n. 3, U.S.Code Cong. & Admin.News 1976, p. 3205 (same). For example, both the House and Senate Reports accompanying § 7609 discuss "cases where the noticee within the meaning of these rules is also the taxpayer whose tax liability is under investigation in connection with the summons." S.Rep. No. 938 at 371; H.R.Rep. No. 658 at 309, U.S. Code Cong. & Admin.News 1976, pp. 3205–

06, 3800. These discussions clearly indicate that the "noticee" may well not be the "taxpayer" and, hence, the references to "the taxpayer and other noticees."

Further, our conclusion that § 7609(a) does not require the IRS to give notice to a co-owner of a joint bank account who is not identified in the summons is not altered by the somewhat conflicting comments gleaned from the legislative history. The Senate Committee on Finance and the House Ways and Means Committee, while discussing the proposed § 7609, stated the following:

> "[T]he Service is to be required to send notice of the summons ... to the person (or persons) who is identified in the description of the books and records contained in the summons .... Where more than one person is identified in the description of the records as a person the records of whose transactions are to be inspected, then all such persons are to have the right to receive notice under these provisions ...."

S.Rep. No. 938 at 369; H.R.Rep. No. 658 at 307–08, U.S.Code Cong. & Admin.News 1976, pp. 3204, 3798–99. The implication of this statement is that only where persons are identified in the summons, are those persons entitled to receive notice. However, the Committee reports also stated:

> [M]any of the problems in this area would be cured if the parties to whom the records pertain were advised of the service of a third-party summons, and were afforded a reasonable and speedy means to challenge the summons where appropriate.

S.Rep. No. 938 at 368; H.R.Rep. No. 658 at 307, U.S.Code Cong. & Admin.News 1976, pp. 3203, 3798.

As the foregoing discussion demonstrates, while the legislative history of § 7609 is not conclusive on the question of notice to an unidentified co-owner of a joint account, the language employed by Congress in drafting § 7609 clearly does provide that "notice ... shall be given to any person ... *identified.*" (emphasis added). Accordingly, "[o]ur analysis is constrained

by a fundamental rule of statutory construction: when the express language of a statute is clear, a court will not adopt a different construction absent clear legislative history contradicting the plain meaning of the words." *United States v. Holroyd,* 732 F.2d 1122 at 1125 (2d Cir.1984). Because the relevant legislative history does not contradict a literal construction of § 7609(a), we hold that the district court erred by "deviating from the words chosen by Congress, which set out the scope of the provision with patent clarity." *Id.*

Furthermore, our construction of § 7609(a) is consistent with the well-established rule enunciated by the United States Supreme Court that the summons power of the IRS should be construed broadly and that a deferential standard must be applied when construing congressional intent regarding the scope of the IRS's summons power. *See, e.g., United States v. Arthur Young & Co.,* —— U.S. ——, ——, 104 S.Ct. 1495, 1501, 79 L.Ed.2d 826 (1984) (the summons power must be construed broadly since it is "critical to the investigative and enforcement functions of the IRS"); *United States v. Euge,* 444 U.S. 707, 711, 100 S.Ct. 874, 878, 63 L.Ed.2d 141 (1980) ("absent express statutory prohibition or substantial countervailing policies," the summons power of the IRS should be construed broadly); *United States v. Bisceglia,* 420 U.S. 141, 150, 95 S.Ct. 915, 921, 43 L.Ed.2d 88 (1975) ("[s]ettled principles of statutory interpretation" require a broad construction of the IRS's summons authority "absent unambiguous directions from Congress"). Applying this deferential standard of review, we find that there is clearly no express statutory prohibition against the enforcement of the summons at issue herein. In addition, we find that the primary purpose behind § 7609—"to require that the target taxpayer be given notice, so that he would be able to assert appropriate defenses," *United States v. Pittsburgh Trade Exchange, Inc.,* 644 F.2d 302, 305 (3d Cir.1981); *accord United States v. New York Telephone Co.,* 644 F.2d 953, 956–57

(2d Cir.1981)—is consistent with our interpretation of the section.

We do not mean to imply that this broad summons power is without bounds. As we noted in *United States v. Tiffany Fine Arts, Inc.*, 718 F.2d 7, 12–13 (2d Cir.1983), in enacting § 7609 Congress balanced the IRS's interest in the effective enforcement of the tax laws against the privacy interests of unnamed taxpayers to be free from governmental interference in their financial records. We hold only that because there is no clear congressional indication in the circumstances before us that the balance be tipped in favor of the privacy interest, we are bound to follow the literal mandate of § 7609(a).

We recognize that our literal interpretation of § 7609(a)'s notice provision may lead to situations where in response to an IRS administrative summons a third-party recordkeeper may well find itself disclosing records in which there is a joint owner and, unless the joint owner is identified in the summons, he will not be notified of the issuance of the summons. In our view, however, this possibility was not thought by Congress to create a sufficient infringement to warrant the inclusion of additional statutory notice requirements for unidentified persons. We believe this view to be reasonable. We agree with the Eleventh Circuit, which recently stated:

> When a taxpayer's records are in the hands of a third-party recordkeeper, there are numerous situations in which the taxpayer's records may be disclosed to other parties during the ordinary course of the recordkeeper's business. For example, taxpayers are not protected from disclosure of their records to the third-party recordkeeper's certified public accountants during an annual audit of the recordkeeper. Similarly, taxpayers whose records are in the possession of a bank/third-party recordkeeper risk disclosure of their records to federal regulatory agencies conducting routine inspections of the bank.

*United States v. Gottlieb*, 712 F.2d 1363, 1369 (11th Cir.1983).

As a final matter, we agree with the district court that the notice provisions of Connecticut's Privacy Act are preempted by § 7609(a) of the Code. The state privacy act requires that at least 10 days' notice be given to a co-owner of a joint savings account before the records of that account are turned over to the IRS, regardless of whether the co-owner is identified in the summons. That requirement is in "conflict" with our interpretation of § 7609(a) and, therefore, under the Supremacy Clause, must give way to the federal scheme. *See Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978) ("Even if Congress has not completely foreclosed state legislation in a particular area, a state statute is void to the extent that it actually conflicts with a valid federal statute.").

### III. CONCLUSION

For the foregoing reasons, we reverse the district court's ruling, and we grant enforcement of the IRS summons issued to appellee First Bank on February 17, 1983.