XÉLAN, INC., et al., Plaintiffs

v.

UNITED STATES of America, Defendant

No. RWT 04CV1863.

United States District Court, D. Maryland.

March 14, 2005.

---

Darrell Hallet, Esquire, Seattle, WA, James Greenan, Esquire, Christopher Hamlin, Esquire, Geenbelt, MD, for Plaintiffs.

Stuart Gibson, Esquire, Washington, D.C., for Defendants.

### *MEMORANDUM OPINION*

TITUS, District Judge.

On May 24, 2004, the Internal Revenue Service ("IRS") issued an administrative summons directed to Johnson Lambert and Company ("Johnson Lambert") in connection with its investigation of Petitioner, xélan, Inc ("xélan"). In response, xélan filed a Petition to Quash the IRS administrative summons, pursuant to 26 U.S.C. § 7609(b)(2). Respondent, the United States, filed a Motion for Summary Enforcement of the administrative summons. Pursuant to 26 U.S.C. § 7609(h), this Court is granted jurisdiction to resolve the dispute.

**I.**

This case involves an IRS investigation of xélan. Xélan is a membership organization comprised of doctors and dentists. Xélan's goal is to provide these professionals with financial and tax planning. An IRS agent, Jay Higgins, began investigating xélan to determine whether any of the purportedly "deductible savings plans" in xélan's repertoire violate provisions of the tax code, including 26 U.S.C. §§ 6677, 6700, 6701, 6707, and 6708. Higgins Decl. ¶ 16.[1] The specific summons issued in this case was directed to Johnson Lambert as part of an investigation under 26 U.S.C. § 6700. This provision imposes a penalty on

> any person who . . . makes or furnishes or causes another person to make or furnish . . . a statement with respect to the allowability of any deduction or credit, the excludability of income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter[.]

26 U.S.C. § 6700(a)(2)(A). Johnson Lambert was retained by xélan to provide premium accounting and statement preparation services for xélan's Doctors Benefit Insurance Company. The summons sought information from Johnson Lambert about xélan, other individuals related to xélan, and the products that xélan markets and offers to doctors. Xélan resists the summons, making both broad arguments as to why the IRS has overreached its ostensible purpose and specific arguments relating to the IRS's alleged failure to

---

1. As stated by Agent Higgins, these plans include the Disability Insurance Program, the 419 Welfare Benefit Trust Program, the Supplemental Disability Equity Plan, the Long- Term Care Equity Plan, the Supplemental Malpractice Equity Plan, and the Medical Savings Equity Plan. Higgins Decl. ¶ 20–34.

provide adequate notice and improper service.

Before considering xélan's position, the Court notes that this is not the first instance in which xélan has resisted an IRS summons. On February 10, 2004, Judge Dalzell in the Eastern District of Pennsylvania issued a Memorandum and Order, which is currently on appeal to the Third Circuit, denying David Cohen's Petition to Quash an IRS summons. In that instance, the IRS was investigating Dr. David Cohen, and his wife Dr. Margaret Cohen, pursuant to its investigation of xélan. Part of the investigation led the IRS to issue a subpoena to SEI Private Trust Company in Oaks, Pennsylvania. The Cohens and xélan opposed the subpoena, raising very similar arguments to those made in this case. Judge Dalzell rejected xélan's arguments and granted the IRS's motion for summary enforcement in a published opinion. *Cohen v. United States*, 306 F.Supp.2d 495 (E.D.Pa.2004).[2]

## II.

### A.

Just as in *Cohen*, xélan resists the enforcement of the IRS administrative summons. However, before turning to xélan's arguments in support of its Motion to Quash, the Court must address xélan's status in bankruptcy court. On August 31, 2004 xélan filed, in this Court, a Notice of Chapter 11 Proceeding in the United States Bankruptcy Court for the Southern

District of California. The bare-bones notice did not argue that the proceedings in this court should be stayed, but, as the United States did, it is reasonable to assume that the possibility of a stay was precisely the purpose of the Notice. Given xélan's presumptive motive, the United States filed a Response to Notice of Chapter 11 Proceedings on September 2, 2004.

11 U.S.C. § 362 is the automatic stay provision of the bankruptcy code. 11 U.S.C. § 362(a) states, *inter alia,* that the filing of a bankruptcy proceeding operates as a stay of judicial proceedings against the debtor except as provided in subsection (b) of this same section. Subsection (b) has numerous sub-subsections which delineate the situations when the filing of a bankruptcy petition does not operate as a stay. The relevant provision in this case is 11 U.S.C. § 362(b)(9) which states that there is no stay "under subsection (a) of (A) an audit by a governmental unit to determine tax liability; (B) the issuance to the debtor by a governmental unit of a notice of tax deficiency; (C) a demand for tax returns...."

■ This exception to the automatic stay provision of the bankruptcy code is directly on point. Cases from the First Circuit and the Southern District of New York buttress the conclusion that a plain reading of the automatic stay provision should not prevent the IRS from enforcing its summons. *See United States v. Arthur Andersen & Co.*, 623 F.2d 725, 727–28 (1st

---

**2.** There are other published and unpublished federal cases concerning xélan's disputes with the IRS and its financial difficulties manifested by proceedings in federal bankruptcy court. The parties have furnished the Court with decisions in these various cases, some more relevant than others as a result of the different posture of the cases. *Xélan v. United States*, No. M–04–83, slip op. (S.D.Iowa Dec. 23, 2004); *United States v. Guess*, No. 04–CV–2184, slip op. (S.D.Cal. Dec. 15, 2004); *Guess*, No. 04–CV–2184, slip op. (S.D.Cal.

Dec. 6, 2004); *Xélan*, No. M–03–83, slip op. (S.D.Iowa Nov.18, 2004); *Xélan v. United States*, No. 04–2289, slip op. (E.D.Pa. Nov. 3, 2004); *Xélan v. United States*, 2004 WL 1047721 (E.D.Pa. May 6, 2004); *Cohen v. United States*, 2004 WL 792373 (E.D.Pa. April 9, 2004); *Cohen v. United States*, 306 F.Supp.2d 495 (E.D.Pa.2004). *Cohen*, 306 F.Supp.2d 495 is the most relevant, as it is most similar to the current situation. The Court has given appropriate consideration to these cases from other jurisdictions.

Cir.), *cert. denied,* 449 U.S. 1021, 101 S.Ct. 588, 66 L.Ed.2d 483 (1980); *In Re Greene,* 50 B.R. 785, 787 (S.D.N.Y.1985); *but see In re Spencer,* 123 B.R. 858, 862–63 (Bkrtcy.N.D.Cal.1991) (disagreeing with *In Re Greene's* conclusion). This Court reads 11 U.S.C. § 362(b)(9)(A) to allow this proceeding to continue, notwithstanding the concurrent proceeding in the United States Bankruptcy Court for the Southern District of California.

**B.**

Because this case does not come before this Court in the form of a ubiquitous summary judgment or 12(b)(6) motion, a relatively detailed discussion regarding the appropriate standard is required.

■ In order to make out a *prima facie* case for enforcement of an IRS administrative summons the IRS must satisfy a four part test; it must "show [1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the Commissioner's possession, and [4] that the administrative steps required by the code have been followed[.]" *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The Government's burden under this regime is not onerous; in fact the IRS "need not meet any standard of probable cause to obtain enforcement of [the] summons[.]" *Id.* at 57, 85 S.Ct. 248. Although the Government's burden is easily met, this does not mean that taxpayers are rendered helpless and unable to dispute the validity of the summons.

The taxpayer retains the right to challenge the summons on any appropriate ground. The teaching of subsequent decisions is that an appropriate ground for challenging the summons exists when the taxpayer disproves one of the four elements of the government's *Powell* showing, or otherwise demonstrates that enforcement of the summons will result in an abuse of the court's process.

*United States v. Rockwell Int'l,* 897 F.2d 1255, 1262 (3d Cir.1990).

■ Upon proper motion, as made in this case, a Court is required to examine the validity of the summons because "it is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Powell,* 379 U.S. at 58, 85 S.Ct. 248. As set forth by the case law interpreting these provisions of the tax code, taxpayers can petition a court to quash an administrative summons in one of two overlapping ways. The taxpayer can either convince a court that the IRS has not met one of the four elements of its *prima facie* case for enforcement, or the taxpayer can argue that the issuance of this summons is an abuse of the court's process. This latter showing can be accomplished by indicating a weakness in the Government's *prima facie* case, *see Cohen,* 306 F.Supp.2d at 499, or by pointing to some aspect of the situation which is inequitable or in some way an abuse of the court's process. In this case, as will be discussed in more detail below, besides disputing the Government's contention that it has met *Powell's* requirements, xélan argues that the administrative summons should be quashed because there is already a Justice Department referral regarding xélan. 26 U.S.C. § 7602(d)(1) provides that "[n]o summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person." *See supra* at 468–69. The starting point is a consideration of the four requirements for a *prima facie* case enumerated by *Powell.*

*Legitimate Purpose*

In an attempt to prove that the IRS is pursuing this summons for an illegitimate purpose, xélan contends that the IRS's actual motive is discovering the names of doctors who participate in xélan's services in order to engage in future examinations of those doctors' federal tax returns.[3] Standing in the way of xélan's argument is the Supreme Court's decision in *Tiffany Fine Arts, Inc. v. United States,* 469 U.S. 310, 105 S.Ct. 725, 83 L.Ed.2d 678 (1985), which held that

> where, pursuant to 26 U.S.C. § 7602, the IRS serves a summons on a known taxpayer with the dual purpose of investigating both the tax liability of that taxpayer and the tax liabilities of unnamed parties, it need not comply with the requirements for John Doe summonses set out in § 7609(f), as long as all the information sought is relevant to a legitimate investigation of the summoned taxpayer.

*Id.* at 324, 105 S.Ct. 725. The IRS argues that *Tiffany Fine Arts* is directly on point and therefore controlling.

■ Rather than disputing the applicability of *Tiffany Fine Arts,* xélan argues that the positions taken by the IRS in this case and in previous cases are inconsistent and contrived to be as onerous as possible, thus evincing bad faith. Xélan further contends that bad faith equals an improper purpose, relying on *United States v. Harris,* 628 F.2d 875 (5th Cir.1980). *See also Powell,* 379 U.S. at 58, 85 S.Ct. 248 ("[A]n abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dis-

pute, or for any other purpose reflecting on the good faith of the particular investigation."). As evidence of bad faith, xélan points out that the IRS requested the names of participants in prior proceedings in order to determine whether xélan's insurance program was in compliance with the law, while presently the IRS seems to have already concluded that the insurance program was not actually "insurance" yet still seeks the names of the participants, only this time to determine whether xélan made fraudulent statements in violation of § 6700. According to xélan, this constitutes bad faith because it is a "complete turnabout on the most critical issue raised in the prior proceedings[.]" Opp. to Summ. Enf. at 11. The difficulty with accepting xélan's argument that this constitutes bad faith is that it requires the Court to adopt what is purely conjecture: that the IRS had intended, from the beginning of its investigation into xélan, to bring a § 6700 audit. Xélan's theory is guesswork because it is just as plausible that the IRS determined that xélan's program was not "insurance" when it obtained information from earlier summonses, and that finding, unbeknownst to the IRS at that time, led them to issue this § 6700 summons.

Xélan also points out that by originally asserting that it needed the names of the individual participants to determine whether xélan's program complied with the law and presently asserting that it needs the names of individual participants to determine whether xélan gave fraudulent advice, the IRS has effectively circumvented the § 7609(f) John Doe requirements. Xélan's bad faith argument, once again, re-

---

**3.** Xélan's first argument highlights the overlapping nature of a taxpayer's attempt to quash an administrative summons. Xélan argues that the IRS is seeking a summons of Johnson Lambert in order to obtain the names of the individual doctors, without following the proper procedures. This circumvention of the required procedures would constitute an improper purpose, thus refuting the validity of the first element under *Powell.* This subterfuge, however, would also clearly be an abuse of the court's process.

quires this Court to make the inferential jump that the IRS's investigation of xélan is a pretext to investigate the individual doctors. Xélan urges this Court to conclude that the IRS changes its position in whichever way permits it the greatest access to the names of the individual participants. The Court is unwilling to accept xélan's conspiracy theory, however, because there is no evidence that it is an accurate version of the facts, and because the Court can envision a patently legitimate reason for obtaining the names of the individual doctors: the IRS needs to figure out how xélan structured its tax saving programs, and the identity of participants in the programs would be helpful in that endeavor. Moreover, the IRS's subpoena power is very broad, *see Powell,* 379 U.S. at 56–58, 85 S.Ct. 248, and considering that "[t]he burden of showing an abuse of the court's process is on the taxpayer," *id.* at 58, 85 S.Ct. 248, it is not prudent for this Court to accept these unproven assumptions suggested by xélan.

*Relevance to the Legitimate Purpose*

The second factor of *Powell,* that the information sought be relevant to the legitimate purpose, is not at issue in this case. The IRS is seeking this information pursuant to a § 6700 investigation. As previously stated, § 6700 prohibits entities from offering fraudulent tax advice. Seeking documents from an undertaking which xélan utilized to offer the advice to its members is clearly relevant to this type of investigation.

*Whether the IRS Already has the Information*

To meet this requirement, the IRS relies on the sworn statement submitted by Agent Jay Higgins declaring, under oath, that the information requested from Johnson Lambert is not already in the possession of the IRS, *see* Higgins Decl. ¶ 39. Xélan contends that this is not sufficient proof to satisfy this requirement. The minimal burden placed on the IRS, however, belies xélan's contention that an IRS agent's declaration alone is not sufficient. No case supports xélan's position that the sworn statement of the IRS agent is insufficient, in and of itself, to satisfy the minimal showing required under *Powell.* Recently, in *Cohen,* the court concluded that the IRS has satisfied this prong of *Powell* by relying on the declaration of the IRS agents, although that court also found relevant further declarations explaining why these documents were required. *Cohen,* 306 F.Supp.2d at 502.

■ In this case Agent Higgins declared that the Johnson Lambert documents are not in the IRS's possession. Although Higgins has not "substantiated [his] assertion by detailing the IRS's difficulty in obtaining information from xélan[,]" *id.,* his declaration that the IRS does not have documents from the accounting firm that was retained by xélan (Johnson Lambert) is adequate because of the reasonable inference that the Court can draw from the fact that the IRS's previous summons were issued to individual doctors, a life insurance company, and xélan itself; not to Johnson Lambert. Moreover, some courts take the position that a court is not required to rely on outside inferences because "[a]ssertions by affidavit of the investigating agent that the requirements are satisfied [is] sufficient to make the prima facie case." *Liberty Financial Servs. v. United States,* 778 F.2d 1390, 1392 (9th Cir.1985) (citations omitted). Other courts have reiterated that all prongs of the *prima facie* showing are "generally made by the submission of the affidavit of the agent who issued the summons and who is seeking enforcement." *United States v. Will,* 671 F.2d 963, 966 (6th Cir.1982) (citing *United States v. Garden State Nat'l Bank,* 607 F.2d 61, 68 (3d Cir.1979)).

As the IRS has met its burden with regard to this prong of *Powell,* xélan must offer persuasive competing evidence that the IRS does in fact have these documents already. Xélan cannot make this showing, arguing only that because thousands of pages of documents have already been produced in the previous cases involving this issue, the IRS should be required, at a minimum, to state what documents it already has in its possession. No case, however, has ordered the disclosure currently suggested by xélan. And, as the Fourth Circuit explained, "inconvenience is not harassment and does not make out a requisite defense that the summons was issued in bad faith." *United States v. McGuirt,* 588 F.2d 419, 421 (4th Cir.1978). *See also United States v. Luther,* 481 F.2d 429, 433 (9th Cir.1973) ("The fact that the records called for were extensive is not material."). Therefore, xélan has not rebutted the Government's showing with regard to the third prong of *Powell* 's requirements.

*Satisfaction of Administrative Requirements*

Xélan argues that the IRS failed to provide notice to all persons identified in the summons as required by 26 U.S.C. § 7609(a)(1). Thus, xélan argues, the IRS has not met the fourth factor of *Powell,* which requires that the IRS follow "the administrative steps required by the Code[,] ... in particular, that the Secretary or his delegate, after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect." *Powell,* 379 U.S. at 58, 85 S.Ct. 248. 26 U.S.C. § 7609(a)(1) provides that

[i]f any summons to which this section applies requires the giving of testimony on or relating to [or] the production of any portion of records made or kept on or relating to ... any person (other than the person summoned) who is identified

in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made[.]

Xélan's contention is that because the IRS summons issued to Johnson Lambert sought documents and related materials concerning xélan employees and xélan members, notice should have been sent to those individual members and employees. The IRS disagrees, arguing that the statute does not require notice to be sent to people about whom information is sought but who are not "identified in the summons."

Xélan relies on *Ip v. United States,* 205 F.3d 1168 (9th Cir.2000) for the proposition that an unnamed individual in a summons is entitled to notice when the IRS issues a summons to a third party seeking documents concerning that unnamed individual. This reliance is misplaced. First, *Ip* was decided when the relevant statute was different and the IRS's argument for not notifying the individual was based on an exception to § 7609 that no longer exists. *See id.* at 1169–71. Second, in *Ip,* the IRS summonsed a bank to obtain financial records of numerous account holders, including the named taxpayer Sheila Ann Ip. In the current case, the IRS summonsed an accounting firm to obtain documents which are relevant to a product offered by a company with whom that accounting firm had a business relationship. The connection between the "individuals" named in this case is far more attenuated than the relationship between the summons and the bank account holders in *Ip.*

The IRS relies on *United States v. First Bank,* 737 F.2d 269 (2d Cir.1984) and *C & J Trust v. United States,* 2002 WL 1987417 (E.D.Cal.2002) for its proposition that § 7609 does not require notice to be sent to all xélan employees and members. Just

as in *Ip*, the relevant statute in *First Bank* was different than the current version. Similarly, *C & J Trust* concerns the issuance of a summons to a bank as a third-party record keeper and considers the issue of whether the trustees of the account must be given notice. *C & J Trust*, 2002 WL 1987417 at *1–*2. The court concluded that the IRS was not required to send notice to the trustees because the IRS "fulfill[ed] section 7609's chief purpose [which is] to notify target taxpayers to allow them to raise defenses." *Id.* at *3. Although *C & J Trust* is not directly on point, to the extent that it is relevant, it suggests that the IRS does not have to send notice to the xélan members because it is the corporation that is the "target" of the investigation, not the individual members.

■ None of the cases cited by either party is directly on point because the controversy in all of them arose from the IRS seeking financial records of specified individuals from those individuals' banks. The current issue is very different. Therefore, the resolution of this case comes down to an interpretation of the statutory language and the general direction to the courts when dealing with IRS summonses. The language of the statute suggests that the individual identified in the statute must be a "person." Xélan would have this interpreted as "group of people," but that interpretation does not remain true to the language of the statute. Additionally, numerous courts have indicated that the IRS summonsing power is an "expansive information-gathering authority[.]" *United States v. Arthur Young & Co.*, 465 U.S. 805, 816, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984); *see also First Bank*, 737 F.2d at 273 (explaining that the Supreme Court has directed that "the summons power of the IRS should be construed broadly and that a deferential standard must be applied when construing congressional intent regarding the scope of the IRS's summons power."). To require the IRS to send notice to all of the xélan participants in order to obtain information about xélan's business itself would frustrate the broad power granted to the IRS. Therefore, following the plain reading of the statute and the case law interpreting the statute, the IRS was not required to send notice to all xélan members or employees.

In its initial pleading, xélan raised the additional procedural issue of whether the IRS properly served Johnson Lambert. Xélan did not pursue this argument, however, in its Brief in Opposition to the IRS's Motion for Summary Enforcement, the only pleading by xélan which discussed cited authority. Nevertheless, this issue warrants a brief discussion.

26 U.S.C. § 7603(b) permits service to be made to "third-party recordkeepers" "by certified or registered mail to the last known address of such recordkeeper." In its initial pleading, xélan contended that the notice was not proper under § 7603 because Johnson Lambert was served by mail in its Bethesda, MD office, rather than its Reston, VA office. This contention is not supported by the record. Exhibit 4 to the IRS's Motion for Summary Enforcement is a copy of the return receipt of the mailed summons. This Exhibit indicates that the summons was in fact sent to Reston, VA. The summons itself lists 7500 Old Georgetown Rd., Suite 700, Bethesda, MD as the Johnson Lambert address, *see* IRS's Ex. 3, but 26 U.S.C. § 7603 is not applicable to the address written on the summons. That statute concerns the service of the summons. Therefore, the service of the summons was proper.

Considering the above analysis, the Court determines that the IRS has met its burden of proving a *prima facie* case for enforcement of the summons. The Court

now turns its attention to xélan's alternative argument-that permitting the summons to be enforced would constitute an abuse of the Court's process. The primary argument advanced by xélan in support of this contention, which is completely divorced from the issues regarding the Government's alleged failure to make out its *prima facie* case, is an allegation that there is currently a Justice Department referral concerning xélan.

### Justice Department Referral

26 U.S.C. § 7602(d)(1) provides that "[n]o summons may be issued under this title ... with respect to any person if a Justice Department referral is in effect with respect to such person." Subsection (d)(2) of this section of tax code defines "Justice Department referral" as situations where "the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws[.]" 26 U.S.C. § 7602(d)(2). In his declaration, Agent Higgins represented that, as of August 17, 2004, the date of his declaration, there was no Justice Department referral with respect to xélan. *See* Higgins Decl. ¶ 42. Xélan disputes Agent Higgins' statement.

Xélan argues that a grand jury subpoena, issued in the Southern District of California to the Vanguard Group, seeking records of accounts held on behalf of xélan, triggers § 7602(d)(1) and precludes the IRS from issuing this summons. *See* Ex. D to Colvin Decl. Xélan contends that the grand jury's request for documents relating to xélan is an indication that there is a criminal investigation involving xélan and the IRS civil enforcement mechanisms should therefore cease.

▮ In response, the IRS explains that there is no evidence that the grand jury subpoena is seeking the Vanguard documents for tax crime purposes. It is just as plausible that the grand jury wants to look at Vanguard's documents pursuant to a criminal antitrust investigation or insurance fraud. Thus, the IRS argues that this lack of specificity of the grand jury subpoena, combined with Agent Higgins' assertion made under penalty of perjury, is sufficient to rebut xélan's contention that § 7602(d)(1) prevents the enforcement of this summons. The Court agrees with the IRS. Once again, xélan's position requires this Court to embrace its suppositions and inferences as to the devious nature of the IRS's methods. This the Court is unwilling to do without more substantial evidence.

According to § 7602(d)(2), the Secretary of the Treasury must refer the case to the Justice Department in order for the IRS to be precluded from issuing a summons. If a "person" under § 7602(d) is the subject of a criminal prosecution but not as a result of a Justice Department referral, then the statute does not contemplate the preclusion of an IRS summons. Indeed, case law supports this narrow reading of the statute. As the Supreme Court stated, "[t]he legislative history of the Code supports the conclusion that Congress intended to design a system with interrelated criminal and civil elements." *United States v. LaSalle National Bank,* 437 U.S. 298, 310, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). Therefore "the primary limitation on the use of a summons occurs upon the recommendation of criminal prosecution to the Department of Justice [because] [o]nly at that point do the criminal and civil aspects of a tax fraud case begin to diverge." *Id.* at 311, 98 S.Ct. 2357; *see also Pickel v. United States,* 746 F.2d 176, 184 (3d Cir.1984) (reiterating the Supreme Court's holding that "[i]f the summons was issued before any recommendation, it was the institutional posture of the IRS that determined whether the summons

was valid: if the IRS had not institutionally abandoned the pursuit of a civil tax determination or collection, the summons was valid.").

Considering the plain language of the statute, and the relevant case law, xélan's assertion, that the summons should be quashed because of the "criminal investigation whose focus is xélan[,]" should not be accepted. The coincidence of a grand jury subpoena naming xélan should not effectively quash the subpoena. Only the specific instance of a Justice Department referral from the Secretary of the Treasury gives rise to the preclusion of the IRS's ability to enforce a summons.

Finally, on November 4, 2004 the United States filed a Notice of Recent Decision by the Eastern District of Pennsylvania. In this decision, *Xélan v. United States*, No. 04–2289, 2004 WL 2486268 (E.D.Pa. Nov. 3, 2004), Judge Dalzell analyzed the *Powell* factors and, after concluding that the United States had made out a prima facie case, considered and rejected xélan's three attempts to show that the summons was issued in bad faith. After rejecting xélan's first two arguments in the same way they were rejected in *Cohen*, the court turned to the argument that there was a Justice Department referral. Unlike the prior cases in the Eastern District of Pennsylvania, in this recent case, the court required the United States to submit *in camera* all documents sent to the Criminal Division of the Department of Justice by the IRS. After "[c]arefully reviewing all relevant documents, [the court] conclude[d] that there [was] no Justice Department referral." *Id.* at 9–10. Although this review by Judge Dalzell is in no way binding on this Court, the close temporal nature of that court's decision should not be ignored. Thus, the Court considers that review to be further evidence that xélan's argument regarding a Justice Department referral should be rejected.

## CONCLUSION

For the aforementioned reasons the Government has satisfied *Powell*'s requirements and has made out a *prima facie* case for the enforcement of the IRS summons. Xélan has not sufficiently rebutted the Government's showing, nor does the Court consider the enforcement of the summons to constitute an abuse of the court's process. Therefore, xélan's Petition to Quash the Administrative Summons will, by a separate order, be DENIED and the Government's Motion for Summary Enforcement will, by a separate order, be GRANTED.

## *ORDER*

Upon consideration of Petitioner's Petition to Quash the Administrative Summons [Paper No. 1], Respondent's Response in Opposition to Petition and Motion for Summary Enforcement [Paper No. 5], the opposition thereto, the arguments presented by counsel at a hearing held before the undersigned on December 10, 2004, and for the reasons stated on the record, it is this 14th day of March, 2005, by the United States District Court for the District of Maryland

**ORDERED**, that Petitioner's Petition to Quash the Administrative Summons [Paper No. 1] is **DENIED**; and it is further

**ORDERED**, that Respondent's Response in Opposition to Petition and Motion for Summary Enforcement [Paper No. 5] is **GRANTED**; and it is further

**ORDERED**, that the Clerk is directed to CLOSE THE CASE.